## ALBANY OYER AND TERMINER.

### THE PEOPLE agt. HIRAM G. BRIGGS.

*Practice in criminal cases — Indictment — On a motion to quash, for irregularity — When a grand juror may be examined — When defendant may move before plea to quash — When facts in the moving affidavit may be alleged on information and belief — Effect of — When indictment will be quashed — Wife not a competent witness against her husband — Right of a defendant in an indictment to a list of the witnesses and copy of the testimony before the grand jury.*

Where the defendant in an indictment moves to quash the indictment for irregularity, a grand juror may be examined and testify to facts showing the irregularity, if it do not arise out of misconduct by the grand jury.

If an indictment be improperly and irregularly found the defendant may, before plea, move upon affidavit to quash it for such irregularity.

The moving affidavit may allege the facts constituting the alleged irregularity upon information and belief, if they should be within the knowledge of the district attorney; and if so alleged they may be sufficient to call upon him to dispute them if not correctly set forth in the moving affidavit.

If an indictment be found or based wholly, or in part, upon evidence clearly incompetent and illegal it will be quashed and the defendant remanded, that his case may be passed upon by another grand jury upon competent and proper evidence.

*Quære.* Whether, if it be shown that an incompetent witness was sworn and gave testimony before the grand jury, the law does not presume that testimony to defendant's injury was given by such witness and cast the onus of showing the contrary upon the public prosecutor?

Under section 2 of chapter 782 of the Laws of 1876 a wife is not a competent witness *against* her husband, and cannot be called against him by the people without his consent.

Right of defendant in an indictment to a list of the witnesses and copy of the testimony before the grand jury discussed by counsel but not determined by the court as the indictment was quashed.

*October*, 1880.

Hon. A. M. OSBORN, justice supreme court, presiding.

Hons. JAMES R. MAIN and JOHN GUTMANN, justices sessions.

DEFENDANT moved, upon an affidavit by himself and Nathaniel C. Moak, his counsel, to quash an indictment against him for murder in the first degree, in killing one Erskine Wood, found by the grand jury at this term.

The affidavit alleged among other things, upon information and belief, that on the hearing of the charge against defendant, on which the indictment was found by such grand jury, there was evidence tending to show that defendant shot and killed said Wood while committing adultery, or having carnal connection with defendant's wife, and that on such hearing defendant's wife was called, sworn and testified before the grand jury without his knowledge or consent, and, among other things, testified, in substance, that she never committed adultery or had carnal connection with Wood, and was not so engaged at the time defendant shot Wood. The application was also based upon the testimony before WILLIAM K. CLUTE, police justice of the city of Albany, where defendant's wife was allowed to be called and sworn against him, though objected to by his counsel as incompetent.

The People agt. Briggs.

The affidavit stated that the affiants were informed and believed the testimony of the several witnesses before the grand jury was substantially the same as before the police justice.

The district attorney read no opposing affidavit, but, after the reading of the moving affidavit, objected that as it was upon information and belief it was not sufficient to call upon the people to answer it.

The court ruled that as the fact whether defendant's wife was sworn and gave testimony before the grand jury, and what she testified to was presumptively within the knowledge of the district attorney, it was sufficient to call upon him to answer the moving affidavits.

Defendant's counsel insisted that as an incompetent and illegal witness testified before the grand jury the presumption, until met or explained by the people, was that the testimony of the witness was prejudicial to defendant, particularly as it is charged on information and belief what the substance of the testimony was, and that is not denied. We, however, have the foreman of the grand jury subpœnaed here to show what the fact was.

The court replied, perhaps that is so, and if you choose to rest your case upon that, of course we shall pass upon the question. If, however, you choose you may call the foreman and show positively what the fact was; you may do so, and the court, upon so important a question, would prefer a certainty to a presumption or a statement upon information and belief. Defendant's counsel thereupon called Peter J. Vedder, the foreman of the grand jury, and offered to swear him as a witness. The district attorney objected that he was not a competent witness, and, also, that he should not be allowed to testify as to what occurred in the grand jury room. The court overruled the objections and the witness being sworn testified, that on the hearing before the grand jury of the charge against defendant there was evidence before the grand jury tending to show that defendant shot and killed Wood while having connection with defendant's wife, and that

defendant's wife was sworn before the grand jury and, among other things, testified she never had had carnal connection with Wood, that she was asleep when the first shot was fired and was awakened by it.

Other facts appear in the opinion.

*Nathaniel C. Moak* and *Martin D. Conway,* for defendant.

*First.* The irregularity or wrong not appearing on the face of the indictment the proper remedy is to move to quash the indictment (1 *Bish. Crim. Proc.* [*3d ed.*], sec. 763; *People* agt. *Shattuck,* 6 *Abb. N. C.,* 33; *U. S.* agt. *Coolidge,* 2 *Gall.,* 364; *Reg.* agt. *Heane,* 9 *Cox Cr. Cas.,* 433; *People* agt. *Hulbut,* 4 *Denio,* 136).

In *People* agt. *Hulbut* (4 *Denio,* 136) the court, per BRON-SON, chief justice, said: "The indictment when presented in due form by the grand jury and filed in court is a record, and like other records imports absolute verity. It cannot be impeached unless it be upon motion by showing that it was not founded upon sufficient evidence, or that there was any other fault or irregularity in the proceedings."

In the same case (*p.* 136) the court further said: "In *Low's case* (4 *Greenl.,* 439) the grand jurors were allowed to testify that they acted under the mistaken impression that it was sufficient, if a majority of the jurors concurred, in finding the bill, and that twelve of their number had not in fact agreed to the bill in question. But this was not on a trial before the traverse jury, but on a motion, and the court fully recognized the distinction between attacking a record in a collateral proceeding and a motion to set aside or amend it. So long as the record remains no defect in the evidence upon which it was founded, nor any irregularity in the proceedings, however great, can furnish any answer to it. But when the ends of justice require it a record may be set aside on motion; and when set aside that is an end of it" (*See, also, People* agt. *Restenblatt,* 1 *Abb. Pr.,* 268; 3 *Am. Law Reg.* [*O. S.*], 418; *People* agt. *Strong,* 1 *Abb. Pr.* [*N. S.*], 247–249).

The People agt. Briggs.

*Second.* The grand jury is a constituent part of the court of oyer and terminer, and the control of that court over its proceedings continues, and may be thus exercised after the grand jury has adjourned (*People* agt. *Naughton*, 7 *Abb.* [*N. S.*], 421, 423, 424 ; 30 *How. Pr.*, 430 ; *State* agt. *Cowan*, 1 *Head* [*Tenn.*], 280 ; *Clem* agt. *State*, 33 *Ind.*, 418). The minutes of evidence taken before the grand jury are a part of the records of the court and remain in the custody of one of its officers (*State* agt. *Little*, 42 *Iowa*, 51). A court always takes judicial notice of its own records in the cause (1 *Whart. on Ev.*, sec. 325) ; and this though not brought before it by affidavit (*Crann* agt. *Smith*, *L. R.* [4 *Exch.*], 146). On a motion to admit the accused to bail the court will always inspect the minutes of the testimony before the grand jury (*People* agt. *Shattuck*, 6 *Abb. N. C.*, 37 ; *People* agt. *Van Horne*, 8 *Barb.*, 158 ; *People* agt. *Hyler*, 2 *Park. Cr. Rep.*, 570, 572). The application of the accused for inspection of the minutes made in the grand jury rooms must be founded on irregularity on the part of the grand jury, which the defendant is entitled to take advantage of, and on the necessity of the production of the minutes for that purpose to enable him to prepare for trial (*People* agt. *Naughton*, 7 *Abb. Pr.* [*N. S.*], 421 ; 30 *How. Pr.*, 430). The moving affidavit states all the facts required by the court, in *People* agt. *Naughton* (7 *Abb. Pr.* [*N. S.*], 431, 432), to entitle defendant to a copy of the minutes of the testimony. The oyer and terminer may, upon cause shown, order a list of the witnesses examined before the grand jury, on finding an indictment, to be furnished by the district attorney to the accused, and allow the accused to examine the minutes made by the grand jury in case of irregularity in their proceedings affecting his indictment (*People* agt. *Naughton*, 7 *Abb. Pr.* [*N. S.*], 421 ; 30 *How. Pr.*, 430). "A party indicted for a capital offense is entitled, as a matter of right, to a list of the witnesses examined as to his case before the grand jury" (*Com.* agt. *Locke*, 14 *Pick.*, 485 ; *Com.* agt. *Knapp*, 9 *Pick.*, 495, 497).

In *Com.* agt. *Knapp* (9 *Pick.*, 497), WILDE, J., said : " A list of the witnesses has never been refused in a case of this kind " (*See, also, People* agt. *Naughton*, 7 *Abb. Pr.* [*N. S.*], 428).

*Third.* When the proceeding is to attack the record directly by motion to set it aside, instead of collaterally, the evidence of grand jurors is competent to show the irregularity (*People* agt. *Shattuck*, 6 *Abb. N. C.*, 35 ; *People* agt. *Hulbut*, 4 *Denio*, 136). " It was at one time supposed that a grand juror was required by his oath of secrecy to be silent as to what transpired in the grand jury room ; but it is now held that such disclosure, wherever it is material to explain what was in issue before the grand jury, or what was the testimony of particular witnesses, will be required " (*Wharton's Crim. Ev.* [*8th ed.*], *sec.* 510). " The oath of the grand juror does not prohibit his testifying to what was done before the grand jury when the evidence is required for the purposes of public justice or the establishment of private rights " (*Burnam* agt. *Hatfield*, 5 *Blackford* [*Ind.*], 21). " The oath of the grand juror is no legal or moral impediment to his solemn examination, under the direction of a court as to evidence before him, whenever it becomes material to the administration of justice " (*State* agt. *Broughton*, 7 *Iredell* [*N. C.*], 96, 100).

In *People* agt. *Shattuck* (6 *Abb. N. C.*, 34–36) the court, on motion to set aside the indictment because not found by twelve grand jurors, said : " The motion was opposed upon the grounds that parol testimony could not be given to impeach the action of the grand jury ; that the indictment was a record and imported absolute verity, and that no member of the grand jury could be sworn to disclose their deliberations. These objections apply to a case where it is sought to impeach the record in some collateral proceeding ; but this is a direct motion before the court, in which the record remains, to have it set aside as void or erroneous. The accused is protected by the bill of rights and cannot be held to answer for a capital, or otherwise infamous crime, unless on presentment

or indictment of a grand jury. That grand jury must be a legal grand jury, and the vote of twelve at least of the body must concur in the finding of a bill, otherwise one cannot be found.

"When it is suggested to the court that an irregularity or error in the respect now urged had occurred, it is consistent with the general superintending power and duty of the court that a proper inquiry should be instituted in order that the evil or wrong may be arrested (*Commonwealth* agt. *Smith*, 9 *Mass.*, 110; *Low's Case*, 4 *Greenl.*, 439; *People* agt. *Strong*, 1 *Abb. Pr.* [*N. S.*], 244).

"Now, of what service would this inquiry be to the accused or to public justice unless grand jurors could be called upon and testify as to the vote, the concurrence, which is of so essential and vital importance?

"The inference, from the fact that the grand jury have found and presented an indictment, is that it was so found by the concurrence of at least twelve of the number of that body. It is no state secret, nor is it a part of their counsel, which each member has been sworn not to divulge. If it was, then they could never disclose the fact that an indictment had been found. How each one voted, or what each one said during their deliberations, are matters that can never be disclosed, for upon the inviolable secrecy which the law has imposed as to these particulars depends, in a great degree, the efficiency and independence and integrity of the grand inquest. It is of necessity that some grand juror must be called upon to testify as to whether a vote was taken and the result, else the investigation as to those facts would be futile."

In *Commonwealth* agt. *Mead* (12 *Gray*, 170, 171) the court, after considering the rule that whatever affects the action of grand jurors so far as their vote and personal conduct is concerned cannot be disclosed, proceeds: "But when these purposes (the finding of an indictment and arrest of the accused) are accomplished the necessity and expediency of retaining the seal of secrecy are at an end. *Cessante ratione,*

*cessat regula.* After the indictment is found and presented and the accused is held to answer, and the trial before the traverse jury is begun, all the facts relative to the crime charged and its prosecution are necessarily opened, and no harm can arise to the cause of public justice by no longer withholding facts material and relevant to the issue merely because their disclosure may lead to the development of some part of the proceedings before the grand jury. On the contrary, great hardships and injustice might often be occasioned by depriving a party of important evidence essential to his defense by enforcing a rule of exclusion, having its origin and foundation in public policy, after the reasons on which this rule is based have ceased to exist."

" The case at bar furnishes a good illustration of the truth of this remark. No possible injury to the interests or rights of the government, that we can see, could happen by a disclosure of the testimony given by the witness before the grand jury which was excluded by the ruling of the court. Certainly none has been suggested by the learned attorney for the commonwealth. On the other hand it is clear that the rights of the accused might be greatly affected and his peril much increased if he can be shut out from showing the fact that an important witness against him is unworthy of credit, or that his testimony before the jury of trials is to be taken with great caution and doubt, because on a previous occasion, when called to testify on oath, he had given a different account of the same transaction from which he has stated in his evidence at the trial. In the absence of a binding authority on this point we think the exclusion of such evidence is not sanctioned by any rule of law or sound principle of public policy."

" There is no principle of law or rule of policy which, in such a case, ought to exclude them. It is entirely different from where they are called upon to impeach a verdict on the ground of their own misbehavior or that of their fellows " (*Follansbee* agt. *Walker*, 74 *Penn. St. R.*, 309).

"On no sound principle can it be said that a witness who has testified before a grand jury shall be permitted to claim that his evidence was a privileged communication so that it shall not be shown, under the direction of the court, whenever it becomes material in the administration of justice. It is material when the evidence is necessary to protect public or private rights" (*Gordon* agt. *Commonwealth*, 4 *Vir. L. J.*, 464 [*Supreme Court, Penn.*]).

In this case the court (*pp.* 467–469) said: "If the witness be incompetent for the purpose offered it must be by reason of public policy. The question, to its full extent, does not appear to have been ruled by this court. As the rule was held at an early day he would be incompetent. For a long time, however, the courts have gradually been modifying its strictness and manifesting a determination to distinguish between the character of the evidence offered. The juror may be a competent witness for some purposes and not for others. Thus, in *Sykes* agt. *Dunbar* (2 *Wheat. Selw. N. P.*, 1091), one of the grand jury, by whom a true bill had been found, was held competent to testify as to who was the prosecutor, although it was contended he could know the fact only from the testimony which had been produced before him in his character as a grand juror, and which it was claimed he was bound not to disclose. This case was cited with approbation in *Huydekoper* agt. *Cotton* (3 *Watts*, 56), and the competency of a grand juror to testify as to who was the prosecutor affirmed. In this case the part of the grand juror's oath, 'the commonwealth's counsel, your fellows and your own you shall keep secret," was considered and a reasonable construction given to it. Substantially, it was said, the oath and whole proceeding before a grand jury was not intended to protect the innocent witness and juror, but to punish the guilty party. It should not be so construed as to punish the innocent or obstruct the due course of justice. On no sound principle can it be said that a witness who has testified before a grand jury shall be permitted to claim that his evidence was a priv-

ileged communication, so that it shall not be shown, under the direction of the court, whenever it becomes material in the administration of justice. It is material when the evidence is necessary to protect public or private rights. It must be conceded that the rule shall not be carried so far as to conflict with the juror's oath. He shall not testify how he or any member of the jury voted, nor what opinion any of them expressed in relation thereto, nor to the act of either, which might invalidate the finding of the jury. His action and the action of his fellow-jurors must be shown only by the returns they make to the court. What a witness has testified to before them is quite another matter. A witness may be indicted for perjury for false swearing before a grand jury, and grand jurors are competent witnesses to prove what he swore to before them (1 *Whar. Am. Crim. Law, sec.* 508)."

"It is said in 1 *Wharton's Law of Evidence* (*sec.* 601): ' It was at one time supposed that a grand juror was required by his oath of secrecy to be silent as to what transpired in the grand jury room ; but it is now held that such evidence, whenever it is as material to explain what was the issue before the grand jury, or what was the testimony of particular witnesses, will be required.' This conclusion appears to be sustained by numerous authorities, among which may be cited *Thomas* agt. *Commonwealth* (2 *Robinson* [ *Va.* ], 795); *State* agt. *Offnutt* (4 *Blackf.*, 355); *State* agt. *Fassett* (16 *Conn.*, 457); *Commonwealth* agt. *Hill* (11 *Cush.*, 137); *State* agt. *Broughton* (7 *Iredell,* 96); *Commonwealth* agt. *Mead* (12 *Gray*, 167); *Way* agt. *Butterwith* (106 *Mass.*, 75).

"The case of *Commonwealth* agt. *Mead* (*supra*) rules the precise case we have before us. It was an indictment for manslaughter. To contradict a witness, who testified in behalf of the commonwealth on the trial, the defendant offered to prove by the grand jurors who found the indictment that he testified differently before them. The court below excluded the witness on the ground that it was against public policy and established practice to permit grand jurors to detail the

evidence given before them for the purpose of impeaching the witness on the trial of the indictment. On exceptions taken the case was reversed, the court holding that when the case was reached for trial all useful purpose of secrecy had been accomplished. The necessity and expediency of retaining the seal of secrecy were at an end and the jurors were held competent for the purpose of proving the facts."

"A prosecuting attorney, it has been held, is privileged from disclosing the proceedings of the grand jury, though not from an examination as to the testimony of witnesses, or as to other matters to which a grand juror could testify" (*Whart. Crim. Ev.* [*8th ed.*], *sec.* 512; *Knott* agt. *Sargent,* 125 *Mass.,* 97; *State* agt. *Van Buskirk,* 59 *Ind.,* 384). What a witness testifies to before a grand jury is not privileged, but where it becomes material in a legal investigation affecting the rights of parties it may be proved by the district attorney or a grand juror.

In *State* agt. *Van Buskirk* (59 *Ind.,* 384) the court said (*p.* 389): "A part of the oath of the grand jury is that they will not disclose any evidence given or proceedings had before the grand jury. * * * Notwithstanding this oath, it has been held by this court, and it may be regarded as settled, that this oath of secrecy ' does not prevent the public, or an individual, from proving by one of the jurors, in a court of justice, what passed before the grand jury' (*Burnham* agt. *Hatfield,* 5 *Blackf.,* 21; *Shattuck* agt. *The State,* 11 *Ind.,* 473, *and Burdick* agt. *Hunt,* 43 *Ind.,* 381).

"In the case last cited it was said of this oath that thereby ' the grand jurors are required to keep secret the evidence given, and proceedings had, before them, unless legally called upon in a court of justice to make disclosures.'

"The prosecuting attorney is not bound by any such oath of secrecy; and certainly we know of no sufficient reason why he may not be called upon, in a court of justice, to disclose any evidence given, or proceedings had, before the grand jury, of which he may have personal cognizance. It is said

that it is contrary to public policy to allow the defendant in a criminal case to call upon the prosecuting attorney, as a witness in a court of justice, to disclose any evidence given, or proceedings had, before the grand jury. We fail to see the matter in that light. In our opinion, public policy does not require that any citizen should be convicted of a public offense by means of doubtful evidence. Where, as in this case, the principal witness for the state has made, as it was claimed, statements under oath before the grand jury in regard to the transaction upon which the criminal charge is predicated, which statements cannot be reconciled with the evidence of the witness on the trial, and this is personally known to the prosecuting attorney, it seems to us that neither his official duty nor public policy would require that he should withhold his evidence of the fact when called upon by the defendant to testify as to the fact, and seek a conviction of the defendant upon evidence, which, from the facts within his personal knowledge, he had reason to believe was at least doubtful.

*Fourth.* "*Ubi jus ibi, remedium.*" There is no wrong without a remedy is one of the best known, as well as one of the most useful, maxims of the law (*Broom's Leg. Max.* [*7th Am. ed.*], 191). By the proposed Code of Criminal Procedure (*proposed* 1880, *secs.* 255, 256, *page* 69 ; *secs.* 249–260, *same Code reported* 1850) it is provided :

"§ 255. In the investigation of a charge, for the purpose of indictment, the grand jury can receive no other evidence than,

1. Such as is given by witnesses produced and sworn before them, or furnished by legal documentary evidence ; or

2. The deposition of a witness in the cases mentioned in the third subdivision of section 8.

§ 256. The grand jury can receive none but legal evidence."

These sections are but enunciations of the common law. A grand jury is bound to take the best proof of which the case admits ; and it is the duty of the prosecuting officer to take care that no evidence is received by them which would

not be admissible at trial (2 *Hawk. Pl. Cr.* [*Curw. ed.*], 353, *book* 2, *chap.* 25, *secs.* 138, 139 ; 4 *Hawk. Pl. Cr.* [*Leach's ed.*], *pp.* 80, 81 ; *Denby's case,* 1 *Leach* [*4th ed.*], 514). A grand jury should have the original affidavit for the finding of bills of indictment when the affidavit is required to be proved, *i. e.,* on the charge of perjury (*Keenan* agt. *Boylan,* 1 *Schoales & Lefroy,* 232).

In *State* agt. *Cain* (1 *Hawkins' N. C.,* 352), where an indictment was found upon the knowledge of a grand juror, without his being sworn as a witness, it was quashed and set aside. In *Hawkins' Pleas Crown* (4 *Hawk.,* 82 [*Leach's ed.*], *book* 2, *chap.* 145, *note ;* 2 *Id.* [*Curw. ed.*], 354, *note*) the rule is thus laid down :

"A grand jury, however, ought not to find an indictment upon the evidence of incompetent witnesses ; and therefore where an indictment against one Crossly was presented, and the only names on the back of it were Priddle and Holloway ; and the grand jury, on its being proved to them that these two persons had been convicted of conspiracy, applied to the court at the Old Bailey in October sessions, 1788, the court told them that they ought not to find the bill on such testimony alone, for having been convicted of an infamous crime, their competency was destroyed. MS."

In England it has been held that when the accused pleaded to the indictment and went to trial it was a waiver of any defect in the method of finding the indictment, though where the witnesses had not been sworn before the grand jury the court unanimously recommended a pardon (*Rex* agt. *Dickinson, Russell & Ryan,* 401). Though on motion, before plea, to quash the indictment because the witnesses before the grand jury were not properly sworn, the indictment was quashed (*Matter of Middlesex Commission,* 6 *Car. & P.,* 90 ; 25 *Eng. C. L.,* 336).

In *United States* agt. *Coolidge* (2 *Gall,* 364) a motion was made to quash an indictment on the ground that the grand jury received testimony of a person not under oath, and for

that reason the indictment was quashed as irregularly found. In that case the counsel for the defendant presented the affi. davit of Lee, the witness, that he was not sworn, while the district attorney read the affidavits of the marshal and his deputy that they thought Lee was sworn in the open court with the other witnesses for the government. Judge STORY (*p.* 367) said: "Lee's affidavit is direct and positive as to a fact of which he could not be ignorant. The counter affidavits are merely of impressions. The court must be governed by the rules of evidence, and the facts must, therefore, be taken to be as stated by Lee. Of the law arising upon these facts there can be no doubt. The grand jury is the great inquest between the government and the citizen. It is of the highest importance that this institution be preserved in its purity, and that no citizen be tried until he has been regularly accused by the proper tribunal. Every indictment is subject to the control of the court, and this indictment, having been found irregularly and upon the mere statement of a witness without oath, which was not evidence, *a cassetur* must be entered."

This case and *Low's case* (4 *Maine*, 439) was approved in *State* agt. *Burlingham* (15 *Maine*, 104, 107, 108), though the court held in that case the defendant had waived the objection by plea, whereas in *State* agt. *Low* he had properly taken the objection before plea. "Where a defendant is required by a jury to testify touching a criminal charge against him, and in pursuance of such requisition does testify before them touching such charge, the indictment for such offense returned by the grand jury will be set aside" (*State* agt. *Froiseth*, 16 *Minn.*, 296). The grand jury are under the control of the court, and it is the province and duty of the court to see that the finding is proper in point of law ; and if not, the court may recommit an improper or imperfect finding, and may, if necessary, exercise the power of compelling a proper discharge of duty on the part of the grand jury (*State* agt. *Cowan*, 1 *Head* [*Tenn.*], 280–282). So an indictment should be

quashed when it clearly appears by affidavit that it was found by the grand jury without adequate evidence to support it (*People* agt. *Restenblatt*, 1 *Abb. Pr.*, 268; 3 *Am. L. Reg.* [*O. S.*], 418; *People* agt. *Strong*, 1 *Abb. Pr.* [*N. S.*], 248, 249; *People* agt. *Hyler*, 2 *Park*, 570). The distinction is this: If there be some legal evidence to sustain the indictment, not mingled with illegal evidence, the court will not quash the indictment because it might not, on such evidence, have indicted the accused. In analogy to the finding of a jury in a civil case the court will not disturb it on the weight of the evidence. But where legal evidence is so blended and mingled with illegal evidence that the court cannot, with absolute certainty, determine whether or not the jury would have found the same indictment without the illegal evidence which was before them, in analogy to reviewing the finding of a jury upon any question of fact, the court is bound to set aside the finding in order that the party injured by the illegal evidence may have the facts properly passed upon by the appropriate tribunal, the grand jury. If the illegal evidence bears in the least degree upon the result it cannot be disregarded (*Worrall* agt. *Parmelee*, 1 *N. Y.*, 519; *Anderson* agt. *Rome*, *&c.*, 54 *N. Y.*, 334; *Baird* agt. *Gillett*, 47 *N. Y.*, 186). So if there be no evidence to authorize the finding of the indictment, as matter of law it is unjustified, and will be quashed.

*Fifth.* Defendant's wife was not a competent witness against him

By the common law, and under the statute law of this state, down to the year 1876, neither husband nor wife could be examined as witness for or against each other, except in prosecutions for personal violence inflicted by one upon the other.

By chapter 448 of the Laws of 1876, section 831 (passed June 2, 1876), it was provided that:

" A husband or a wife is not competent to testify against the other, upon the trial of an action, or the hearing, upon the merits of a special proceeding founded upon an allega-

tion of adultery, except to prove the marriage. A wife is not a competent witness for or against her husband in an action for criminal conversation. A husband or wife shall not be compelled to disclose a confidential communication made by one to the other during the marriage."

This relates to civil actions.

At the same session (*by chapter* 782, *Laws of* 1876) the legislature had enacted (April 27) that:

" § 2. In all criminal trials, and examinations before trial, a husband or wife may be examined as a witness on behalf of the other, but upon no such trial or examination shall a husband or wife be compelled to testify against the other."

Before this section the wife was not a competent witness against, or for, her husband.

The court of appeals had held that: "A wife is not competent witness against her husband in a civil action or proceeding" ( *Wilkie* agt. *People*, 53 *N. Y.*, 525).

It required an affirmative provision, making her competent on either side, to make her so. This section affirmatively declares she shall be for her husband, and then proceeds nega tively to say that she shall not be compelled to testify against him. There is no affirmative declaration that she may. A mere negative provision that she shall not be compelled to be, certainly is not an affirmative provision that she may be. When the act of 1876 was passed, no one would have claimed that, under any circumstances, she was competent against her husband. If not competent she could not be allowed to be sworn against him. Suppose the legislature had simply passed an act in the words of the last part of the section, " upon no such trial or examination (criminal trials and examinations before trial) shall a husband or wife be compelled to testify against the other." Would it have been anything more than a declaration of part of the law, as it then existed, that a husband or wife should not be compelled to testify against the other? It would have removed no existing incompetency. It would have given or conferred no competency.

The People agt. Briggs.

It is a novel proposition that the competency of a witness, as a witness against another party, depends upon the willingness of the witness to testify, without the slightest power on the part of either party, of the court, or of the law, to interfere or to have a word to say on the subject (*See* 22 *Alb. L. J.*, 81).

The Iowa Code provides as follows:

" § 3641. The husband nor wife shall in no case be a witness for or against the other, except in a criminal proceeding for a crime committed by one against the other, or in a civil action or proceeding one against the other, but they may in all civil and criminal cases, be witnesses for each other."

Under this statute in *State* agt. *Houston* (50 *Iowa*, 512), after conviction defendant sought to reverse the conviction on the ground that his wife was called as a witness before the grand jury.

The court said : "Amelia M. Houston, wife of the defendant, was examined and testified before the grand jury. It is insisted by the defendant that that fact rendered the indictment void, and that the verdict cannot be allowed to stand. The wife cannot be a witness against her husband except in a criminal prosecution for a crime committed against her, and in a civil action brought by one against the other, but she may be a witness for him in all cases (*Code, sec.* 3641). When the grand jury have reason to believe that evidence within its reach will explain away the charge, it may order such evidence to be provided (*Code, sec.* 4276).

"A witness, then, called before the grand jury is not necessarily called against the defendant. It might be the defendant's privilege that his wife should be called.

" If, however, where a defendant's wife is called, and the facts of which she has knowledge are unfavorable to the husband, it would be proper for her to object to testifying, and we think she could not be compelled to testify against her objection. If she testified, and her testimony was unfavorable to her husband, so that it appeared that the indictment was found, in

whole, or in part, upon her testimony, possibly the indictment might be quashed upon that ground. But the defendant should judge whether her testimony was favorable or unfavorable before proceeding to trial, and moved to quash if he thought there was ground for it. We think it too late to raise an objection of this kind after conviction."

The Texas Code provides that :

" The husband and wife can in no case testify against each other, except in a criminal prosecution for an offence committed by one against the other; but they may, in a criminal prosecution, be witnesses for each other " (1 *Tex. App. Rep.*, 284).

In *Dill* agt. *State* (1 *Tex. App. R.*, 278), the wife of one defendant was allowed to be called by the state under objection by the co-defendants of the husband. A *nolle prosequi* was subsequently entered in favor of her husband.

On error, after giving at length (*pp.* 282, 283), the reasons upon which the wife was not allowed to be called against the husband, and quoting the above section of the Code, the court (*pp.* 284, 285), says :

" It is further contended on the part of the state that when the *nolle prosequi* was entered as to the defendant, William Bell, he became a competent witness, and that if Mrs. Bell had then been placed on the stand there could have been no objection to her testimony ; for that, as to the remaining defendants then on trial, she sustained no disqualifying relation, and stood disinterested, but that if there were any good objections to the testimony of Mrs. Bell at the time it was delivered, they were removed when a *nolle prosequi* was entered as to her husband. After mature reflection, and a careful examination of the authorities, we do not believe that she was a competent witness for the state against the appellants at the time she testified. The construction we put upon article 3113 is, that it was never intended so to change the rules of the common law as to make her a competent witness to testify against other defendants on trial with her husband,

as in this case ; for the article of the Code relied on says, the husband and wife can in no case testify against each other except in a criminal prosecution for an offence committed by one against the other. If her testimony was not competent at the time it was given, the entering of the *nolle prosequi* as to her husband did not remove the objections to it. After the *nolle prosequi* was entered she might have been called to the stand as a witness for the state, and her testimony would have been admissible. But this was not done."

In *Hubbell* agt. *Grant* (39 *Mich.*, 641), it was held that :

" The statutory rule that a husband may not testify against his wife without her consent, cannot be waived, in her absence, by the mere omission of her attorney to object to the testimony."

The court (*pp.* 643, 644), said : " Section 5969 of the compiled laws provides that the husband shall not be examined as a witness, for or against his wife without her consent. No consent was given in this case, and unless we can say that because no objection was made by Mrs. Grant to the examination of her husband she thereby waived the benefit of this provision, his testimony as against her cannot be considered and complainant must, therefore, fail. It does not appear that Mrs. Grant was present during the examination, or any part thereof, so that the failure to object, and a waiver thereby, must have been that of her attorney or solicitor in the case. The reason of the rule for excluding either husband or wife from being witness in a case in which the other was a party was so strong that, according to Professor Greenleaf, it could not be relaxed even by consent ; that the public had also an interest in the preservation of domestic peace, which might be disturbed by the testimony notwithstanding the consent (1 *Greenleaf Ev.*, sec. 340).

" If, then, the rule was so strict at common law, and our statute has so far relaxed it, that by consent they may be examined, can it mean that an actual assent is not necessary, but that consent may be implied from the mere silence of the

other party or that of her solicitor in her absence? We are of opinion that this would be carrying the relaxation of the rule to an extent not comtemplated by the legislature. There may be cases where both parties are present and one is called as a witness, where a failure to object might be deemed a waiver, but in the absence of such party we are of opinion that her solicitor's silence could not supply the place of her actual consent."

In *State* agt. *Donovan* (41 *Iowa*, 587), under a statute somewhat similar to ours, the husband called his wife as a witness in his own behalf, and the court below refused to allow her to testify. The supreme court reversed the judgment, holding the husband had a right to call her in his own behalf; not a word was uttered about her being competent against her husband.

The motion should be granted.

*Lansing Hotaling*, district attorney, and *William F. Beutler*, assistant district attorney, for People.

OSBORN, *P. J.* — The defendant was indicted by the grand jury of Albany county, at this present term, for the murder of one Erskine Wood, at the town of Coeymans, in July last. The defendant, upon being arraigned, was given, at the request of his counsel, an opportunity before pleading to move to quash the indictment, and his request was granted.

This motion is, therefore, to quash the indictment; also, that the accused may be furnished with the names of the witnesses who appeared before the grand jury, and on which the indictment was obtained, as well as the evidence, or a true copy thereof, as given by such witnesses.

The motion to quash the indictment is based solely on the ground that the wife of the prisoner was called as a witness, and gave important testimony against him, and this without his knowledge or consent.

The district attorney, upon the motion, stated that no

minutes of any consequence were kept of the testimony before the grand jury; that there had been a thorough examination of the charge before the coroner and the police magistrate of this city shortly after the homicide, and that full minutes were kept on such investigations. The witnesses before the grand jury were examined by the district attorney or his assistant, from these minutes, and it is asserted that the evidence is substantially the same.

I have examined these minutes, though very voluminous, with great care, to determine whether the evidence given by Mrs. Briggs probably affected or influenced, in any degree, the grand jury in presenting an indictment against the prisoner for murder in the first degree.

The prisoner has resided for many years in Coeymans. For some time before the day on which the homicide occurred, he had been upon the jail limits of Albany, an execution or executions having previously been issued against his body. He was in the habit of leaving the city every Saturday night after midnight, and going to his home in Coeymans, where he resided with his wife, returning before midnight Sunday evening, so as to prevent any action for an escape. The deceased, Erskine Wood, was, and for some months had been, a hired man, and boarded in the family of Briggs.

Briggs is a man well advanced in years. Mrs. Briggs is a second wife, and a comparatively young woman. Wood was a young man.

On Sunday morning, July eleventh, Briggs arrived at his home at 2 or 3 o'clock in the morning, and got into the house without disturbing any of the inmates. He remained in an outer room, not going to the bed-room of his wife, and where she was at the time.

A short time after, Wood, as prisoner alleges, came from his own room in a nude state and went to Mrs. Briggs' room and into the bed with her, and was about to commit adultery, when Briggs fired a pistol or revolver, inflicting injuries or wounds from which Wood died.

After being shot, Wood ran to the house of a neighbor and was taken in and cared for. Briggs at once rings a bell attached to some of the buildings, and by this and the noise made by him he succeeded in getting some of his neighbors aroused, and they get to Briggs' house at about, or shortly after, daybreak.

To these he makes the statement of the circumstances under which he shot Wood.

The neighbor to whom Wood went swears that he was naked when he first came to his house, and this greatly tends to corroborate the prisoner's version of the transaction.

That Wood died from pistol wounds discharged by prisoner is not denied.

The more serious and difficult question to determine is, under what circumstances did the killing take place?

I also find some evidence tending to show intimacy between Mrs. Briggs and Wood during the prisoner's absence from home, such as riding together on several occasions.

It appears that, before the grand jury, Mrs. Briggs denied any adulterous or improper intercourse or intimacy with Wood, and says he was not in her room, to her knowledge, that night, and that she was first aroused by the discharge of the revolver and noises immediately following.

It will, therefore, be seen that her testimony was most unfavorable and damaging to her husband, and would leave the impression that the killing was a deliberately planned act on the part of Briggs, and from a premeditated design to kill Wood.

In a word, that it was not committed in the heat of passion upon sudden provocation, or under such circumstances as to make the crime anything less than murder in the first degree.

I am aware that the court of appeals has held, and all will admit properly, that a man may be guilty of murder in the first degree for killing another, while in the very act of adultery with his wife, when such killing was the work of deliberation and premeditation.

But the same court has held that such adulterous conduct may furnish the greatest provocation for killing the adulterer, and when this is done upon a sudden discovery, in a moment of great mental excitement, and when the passions are aroused, so that the man has no time for deliberation and premeditation, but acts from the impulse of the moment, without an intent to kill, the crime is not murder, and a conviction could not be expected for any higher offense than manslaughter in the third degree.

From this it will be seen how important was the testimony of Mrs. Briggs for the prosecution, and how damaging to the accused. Without this, *non constat*, the indictment might not have charged this grave offense.

It may be said that this can do no harm, even though it be erroneous, as upon the trial the alleged improper evidence can be kept out. But under this indictment no bail can be given. The prisoner must remain in custody without such an opportunity for preparing his defense as his freedom would allow him, and which he might secure by bail if the indictment was for a lesser offense than is here charged.

This brings me to consider the question which underlies this motion. Was it proper, competent and legal for Mrs. Briggs to give this evidence? Does the law permit her to be called as a witness and give evidence against her husband and in favor of the prosecution, even though she may be willing, without the knowledge or assent of her husband? If so, the important part of this motion must be denied.

By the common law, and under our statutes prior to 1876, neither husband or wife could be examined as a witness for or against each other, except in prosecutions for personal violence, one upon the other. Unless, therefore, we can find some statute since that time which in express terms makes it competent for the prosecution to call Mrs. Briggs as a witness against her husband, on a criminal charge, her evidence was not only improperly received by the grand jury, but it is absolutely incompetent.

The only statute under which it is pretended that such a course as was here pursued is permitted or admissible, is to be found in section 2, chapter 782 of the Laws of 1876, passed April twenty-seventh. That section reads as follows:

Section 2. In all criminal trials, and examinations before trial, a husband or wife may be examined on behalf of the other, but upon no such trial shall a husband or wife be compelled to testify against the other.

Does this section confer the right claimed by the prosecution? It seems to me clearly not. The only innovation which this section makes upon the common law or the statutes as they formerly existed, was to give a right to a husband or wife to be examined as a witness on behalf of the other in a criminal trial or examination. Suppose this were all of the section, would it be contended for a moment that either could be called as against the other? Of course not.

Now, the other words are of a negative character. They certainly create no new right or privilege as to the husband or wife being witnesses that did not exist before. Mark the language: "But upon no such trial or examination shall a husband or wife be compelled to testify against each other."

The only construction that can be given to these words to warrant the position taken by the prosecution, would be that, because the legislature said they could not be compelled to testify against the other, the inference is they might do so if such testimony was voluntarily given. But it would be most dangerous to allow any such interpretation or construction of the section. Such an innovation upon the common law would require a positive, affirmative provision or enactment of the legislature. She could not be called as a witness in behalf of her husband until the legislature so enacted.

She certainly cannot be called to give evidence against him until the authority is expressly given.

It may be that the latter part of the section amounts to nothing. Certainly no one claimed, before its enactment, that husband or wife, by any law that ever existed, could be

compelled to testify against each other ( *Wylie* agt. *People*, 53 *N. Y.*, 525).

But it may have been placed there (and I think this the more probable reason for the employment of the language) to prevent a husband or wife, after being called as a witness for the other, or on behalf of the other, as the language is, from being compelled, on cross-examination, to testify to facts injurious to the party in whose behalf he or she was called, and not inquired of on the direct examination, or at all necessary to explain the evidence given in chief.

For instance, a wife might be called as a witness on behalf of the husband, to prove some one isolated fact. It may be that the legislature, by saying that she should not be compelled to testify or give evidence against him, intended to prevent, upon a cross-examination, an inquiry into any other matters not inquired of upon the direct examination, and which might be very damaging to the husband, and so *vice versa.* Whether this be the correct solution or not, it is quite immaterial. It is enough that no positive enactment can be found making it proper to call husband or wife as a witness against the other. The following authorities (if indeed authorities are necessary on this point) go to substantiate this reasoning (22 *Alb. L. J.*, 81 ; *State* agt. *Houston*, 50 *Iowa*, 512 ; *Dill* agt. *State*, 1 *Tex. App. R.*, 278 ; *Hubbell* agt. *Grant*, 39 *Mich.*, 641).

I have thus endeavored to show that Mrs. Briggs gave most important evidence against her husband before the grand jury, and, second, that such evidence was incompetent, for the reason that she could not legally give such evidence. It only remains to consider what is the remedy of the prisoner, if any.

The law requires, and the grand jury are always charged, that no indictment should be presented unless the guilt of the accused is clearly established by credible, legal and competent testimony. It may be said, and truthfully, that no indictment could ever stand if it was to be set aside because some illegal evidence was admitted. The grand jurors are not lawyers

and it often happens that questions are put and evidence elicited that would not be allowed in court. Shall every indictment therefore be set aside ? I answer, by no means. Where there is sufficient legal evidence to warrant the finding of a bill, no court would set it aside for technical illegalities, which it is apparent did not and could not have influenced the action taken. But in this case the mistake is one of substance, and examining, as I have, with great care the evidence taken, I am by no means prepared to say that such a conclusion would have been arrived at without the testimony of Mrs. Briggs.

In view of what has been stated it would seem that some remedy should be afforded to the accused. I think the relief invoked by his counsel, viz. : The motion to quash the indictment, the only one that can be afforded. In a case reported in 2 *Gallison*, 364, judge STORY, at page 367, says :

" The grand jury is the grand inquest between the government and the citizen. It is of the highest importance that this institution be preserved in its purity, and that no citizen be tried until he has been regularly accused by the proper tribunal. Every indictment is subject to the control of the court ; and this indictment having been found irregularly, and upon the statement of a witness without oath, which was not evidence, a *cassetur* must be entered " (*See, also, State* agt. *Burlingham*, 15 *Maine*, 101 ; *People* agt. *Shattuck*, 6 *Abb. N. C.*, 33 ; *People* agt. *Hulbut*, 4 *Denio*, 136 ; 1 *Bish. Crim. Prac.* [3d ed.], sec. 763 ; 1 *Abb. Pr. R.*, 268 ; 1 *Abb. Pr.* [*N. S.*], 248, 249).

We think the indictment should be quashed, and the prisoner remanded to await the action of another grand jury.

In view of this disposition of the case it is quite unnecessary to examine the other branches of this motion.

The following order was thereupon approved and entered :

The grand jury at this term of the court having found and returned an indictment against the defendant for murder, and the defendant having moved, on the affidavits of Hiram G. Briggs and Nathaniel C. Moak, to quash said indictment.

Now, after reading said affidavit and notice of motion, reading the minutes of testimony before the police justice, and taking the testimony of the evidence of Peter J. Vedder, the foreman of said grand jury, *viva voce*, by which it appeared Allie T. Briggs, the wife of said defendant, was sworn as a witness in behalf of the people against her said husband, before said grand jury, on the investigation of the charge against defendant, whereon the indictment was found, and that said Allie T. Briggs, among other things, testified on such hearing and investigation before said grand jury that, at the time when defendant is claimed to have killed said Erskine Wood, she said Allie T. Briggs, was not committing adultery or having carnal connection with said Erskine Wood, one of the questions before the grand jury being whether defendant so killed said Wood while having carnal connection with defendant's wife; and that said indictment was in part based and founded upon such incompetent evidence. After hearing Nathaniel C. Moak, of counsel for defendant, and Lansing Hotaling, district attorney of Albany county, opposed, it is ordered and adjudged that said indictment be and the same hereby is quashed and prisoner remanded to await the action of another grand jury.

NOTE.—The precise point involved in the case of Briggs, as to the competency of the wife as a voluntary witness against her husband, was decided the same way in *Byrd* agt. *State* (57 *Miss.*, 243), reported since judge OSBORN's decision. The Code of Mississippi (*sec.* 759) provided (57 *Miss.*, 245) that "Husband and wife may be witnesses for each other in all criminal cases, but they shall not be *required* to testify against each other as witnesses for the prosecution. Nothing herein contained shall be so construed as to debar full cross-examination by the prosecution of any husband or wife of an accused party who may be placed on the stand for the defense." The court below (*p.* 245) "held that, under this section, the wife may be a *voluntary* witness for the prosecution against her husband's consent."

The supreme court, on error, reversed the conviction, saying (*pp.* 245–7): "We are constrained to differ from him (the judge below) in the construction he has placed on this statute.

"The statute is in derogation of a very ancient and well established rule

---

The People agt. Briggs.

---

of the common law, based, as we have above seen, in great part, upon
grave reasons of public policy, having reference to the preservation of
the happiness of parties joined together in the marital relation.    Statutes
which are in derogation of the common law must be construed strictly,
so as not to give them an operation and effect beyond the clearly expressed
intention of the legislature (*Hopkins* agt. *Sandidge*, 31 *Mass.*, 668).    Such
statutes are to be construed with reference to the principles of the com-
mon law, and it is not to be presumed that the legislature intended to
make any innovation on the common law further than the necessity of
the case required (*Edwards* agt. *Gaulding*, 38 *Miss.*, 118; *Holman* agt.
*Bennett*, 44 *Miss.*, 322).    The rule of the common law excluded them as
witnesses both for and against each other in criminal as well as civil cases.
There was no difference as to their exclusion in either class of cases, and
the rule was the same whether they were offered as witnesses for or
against each other, except in a small class of criminal cases, where the
wife was admitted to testify against the husband for her own protection
and personal security.    This being the state of the law, the legislature, by
section 760, made them competent witnesses for each other in civil cases,
leaving them still incompetent as witnesses against each other in that class
of cases.    In the section under consideration, the language is, 'husband
and wife may be witnesses for each other in all criminal cases,' clearly
showing that the legislature intended to apply the same rule as to their
competency in criminal and in civil cases.    If the legislature had intended
to make them witnesses against as well as for each other, it would have
been an easy matter to express that intent in unmistakable language.    No
reason is perceived why the legislature should not have done so, if,
indeed, they had that intent, nor is it easy to give a satisfactory reason
why the legislature should make them witnesses against each other in
criminal cases, when it is undoubted that they are restricted in civil cases
to being witnesses for each other.    The whole force of the implication,
that the legislature intended to allow one to be a *voluntary* witness against
the other in criminal cases, arises from the use of the words 'but
they shall not be required to testify against each other as witnesses for
the prosecution,' following immediately after the provision allowing them
to be witnesses for each other, and as a part of the same sentence.    We
regard this as rather an over-cautious insertion to prevent an apprehended
construction of the preceding words, than as engrafting a new and inde-
pendent provision on the statute, which would be the case if it allowed
the examination of one against the other, in case the party offered as a
witness did not object.

    "But if we are to construe this language to mean that the legislature
thought that by the common law husband and wife might be required to
testify against each other, when they were allowed to testify in behalf of
each other, and to infer that this provision was inserted to prevent the

operation of such a rule, without the consent of the party offered as a witness, it does not follow that we are to construe the provision as making this erroneously supposed rule of the common law a part of the statutes of the State. An enactment of the legislature, based on an evident misconception of what the law is, will not have the effect, *per se*, of changing the law so as to make it accord with the misconception (*Davis* agt. *Delpit*, 25 *Miss.*, 445).

" For the error in admitting the wife to testify against the husband, against his objection, the judgment is reversed, and a new trial granted, and cause remanded " (*And see, also, People* agt. *Crandon*, 17 *Hun*, 490). [REP.