THE STATE OF KANSAS v. ETHAN A. McCORD.

1. CRIMINAL LAW; *Information for Murder; Requisites.* An information is good that states the nature of the offense charged, with accuracy, precision and certainty, so that the accused cannot be misled as to the charge he has to answer, nor the court in doubt as to the judgment to be pronounced on a verdict.

2. WITNESS; *Wife of Prisoner Competent Witness for the State.* Under the statute of 1871 the wife of the accused is a competent witness for the State in the trial of her husband for a criminal offense. The court cannot require her to testify, but may permit her to do so voluntarily.

3. NEW TRIAL; *Effect of Order; Position of Parties.* In this State a new trial granted on the motion of the defendant in a criminal case, places the party accused in the same position as if no trial had been had.

*Appeal from Miami District Court.*

THE defendant *Ethan A. McCord* was charged by information with the crime of murder in the first degree. Omitting the caption and title, the body of said information is as follows:

" And now comes E. F. Smith, County Attorney for Miami county, State of Kansas, and here in said district court, in the name, by the authority, and on behalf of the State of Kansas, information gives: That one *Ethan Allen McCord,* late of said county of Miami, on the 21st day of September, 1870, at the county of Miami and State of Kansas, in and upon one Lorenzo Hilliard, then and there being, did willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought, make an assault; and that the said E. A. M., a certain revolving pistol, then and there charged with gunpowder and divers, to-wit, three leaden bullets, which said revolving pistol he the

said E. A. M. in his right hand then and there had and held, then and there willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought did discharge and shoot off, to, against, upon, and through the said L. H.; and that the said E. A. M. with the divers, to-wit, three leaden bullets aforesaid, out of the revolving pistol aforesaid, then and there by force of the gunpowder aforesaid, by the said E. A. M. discharged and shot off as aforesaid, then and there willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought did strike, penetrate, and wound the said L. H. in, upon, and through the left side of the face of him the said L. H., and in, upon and through the right side of the lower part of the breast of him the said L. H., and in, upon and through the right side of the body of him the said L. H., thereby then and there giving to him the said L. H., in upon and through the left side of the face of him the said L. H., penetrating through the face and head of him the said L. H., and in, upon, and through the right side of the lower part of the breast of him the said L. H., penetrating through the body of him the said L. H., and in, upon, and through the right side of the body of him the said L. H., penetrating through the body of him the said L. H., three mortal wounds, of which said three mortal wounds he the said L. H. then and there instantly died. Wherefore the said county attorney doth inform the court here, that the said E. A. M., him the said L. H., in the manner and by the means aforesaid, willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought did kill and murder, contrary," etc.

To this information the defendant plead "not guilty." At the December Term, 1870, the case was tried, and a verdict returned finding the defendant *McCord* "guilty of manslaughter in the third degree." *McCord* moved for and obtained an order setting aside the verdict and granting him a new trial. At the May Term, 1871, the cause was again tried; and upon the issue first joined. Sarah McCord, wife of the prisoner, was called as a witness by the State, (ch. 118, § 1, laws of 1871,) and asked if she gave her free consent to testify as a witness on the trial. She consented. The defendant objected to the examination of the witness for incompetency. The objection was overruled and excepted to. Among the instructions given was one that, "if they believed that the

evidence warranted the same they might find the defendant guilty of murder in the first or second degree, or of any of the several degrees of manslaughter, or of an assault only." To this instruction defendant excepted. The jury returned a verdict of "guilty of murder in the second degree." (The *maximum* punishment for manslaughter in the third degree, is imprisonment in the penitentiary for three years; § 29, Crimes Act. The *minimum* punishment for murder in the second degree is imprisonment in the penitentiary for ten years; § 8, Crimes Act.) A motion for a new trial—upon grounds stated in the opinion—was made and overruled, and defendant excepted. Defendant then filed a motion in arrest of judgment, "for the reason that the information did not state facts constituting a public offense," which motion in arrest of judgment was also overruled, to which defendant excepted. The court sentenced the defendant to ten years' imprisonment in the penitentiary; and from this judgment defendant appeals to this court.

*B. F. Simpson*, and *R. B. Mitchell*, for appellant:

1. The court erred in permitting Sarah McCord, the wife of the defendant, to testify as a witness on behalf of the State against the objection of the appellant.

The wife of a defendant is an incompetent witness. Laws, 1871, ch. 118, § 1. The court below, in construing the first *proviso* in the act, based its ruling on the *common* meaning and acceptation of the word "*required,*" and inasmuch as the witness *volunteered* her testimony, held that she was a competent witness; but a recurrence to familiar rules of construction applied to this statute, will easily demonstrate the error of this view. Gen. Stat., 999, § 1; 2 Kas., 41; 10 Peters, 449. The word "required" is used in its legal sense in § 325 of the civil code.

By the body of the act of 1871 the wife or husband of a person charged with crime is a competent witness; and if it was not for the proviso, this competency to testify would

operate " as well for the State as for the defendant." But the
proviso *restrains* the State from placing on the stand the wife
of a husband charged with crime, or the husband of a wife
charged with the commission of a criminal offense, and modi-
fies their competency to this extent. See Sedgw. on Const.
Law, p. 62.

That construction of the act most favorable to the defendant
must be adopted. The act itself is framed in the interests
of innocence and truth. Its object is to allow the defendant to
establish, by his own testimony and that of his wife, his inno-
cence of the crime charged. It leaves the question with him to
determine whether he shall take the witness stand; and leaves
with him, equally, the right to determine whether his wife shall
or shall not testify. But it is said that the legal effect of the
proviso is to make the question, whether the wife or husband
of a prisoner on trial will testify for the State, a *personal priv-
ilege*. Can this be so? In a criminal case has a witness the
privilege of deciding whether he or she shall testify or not?

If the question of construction is a doubtful one the court is
authorized to consider the effect and consequences of the
construction given in the *proviso* by the court below. In this
view, if the court will examine the testimony of Mrs. McCord
it will see the evident desire to convict, and will hesitate to
give this proviso a construction which will allow the wife an
opportunity to convict her husband of an infamous crime, and
then make the conviction a cause for divorce.

2. The court misdirected the jury on the second trial in this,
that the defendant might be found guilty of murder in the
first or second degrees, or manslaughter in the first or second
degrees.

Under this information, charging murder in the first degree,
the defendant could have been convicted of murder in the first
or second degrees, any one of the four degrees of manslaugh-
ter, or of an assault. Crim. Code, § 121; 2 Kas., 405; 3 Kas.,
450, 485.

But the verdict of " guilty of manslaughter in the third
degree " on the first trial was a verdict of *not guilty* as to all

the higher degrees of the crime charged in the information. This is true on reason and principle, in the absence of authority. In finding the first verdict the jury necessarily passed upon the question of his guilt from the highest to the lowest degree included in the information; and having determined the question, and *named* the degree of guilt, that nomination excludes all degrees higher. [In support of this view counsel cite numerous cases, special mention of which is made, and the cases themselves designated in the opinion.]

The appellant waived no rights by not filing pleas of acquittal, and once in jeopardy. A defendant cannot waive the operation of constitutional provisions. 18 N. Y., 128; 6 Humph., 413; 14 Ohio St., 493; 15 Ill., 511; 27 Mo., 324; 35 id., 105.

3. The information is defective, in not stating the *intent:* and the motion in arrest of judgment ought to have prevailed. 27 Iowa, 402, 415; 4 G. Greene, 500; 8 Ohio St., 98; 10 id., 459; 5 Mo., 364; 20 id., 58; 25 id., 325; Wharton Am. Cr. L., § 1084.

We know that this court, in *Smith v. The State,* 1 Kas., 365, sustained an indictment from which this information must have been copied; but to do so, they "injected a legal conclusion into the body of the indictment;" and we think the weight of authority is against such decision.

*E. F. Smith,* and *W. R. Wagstaff,* for the State:

1. The act of February 21, 1871, (ch. 118,) makes the prisoner himself, the prisoner's wife, or husband, in a criminal case, competent witnesses; and the question, To what extent does this *proviso* restrain the operation of the preceding part of the section? The wife or husband of the person on trial or examination shall be required to testify *except* as a witness on behalf of the person on trial or examination.

There appears no judicial interpretation of the word "*required.*" Webster gives the following definition: "The verb to require means to demand, to ask as of a right and by authority, to complain, to compel." The word defined means

something opposed to willing, voluntary. In this case, it was the voluntary act of the witness. No compulsory means was resorted to by the state or the court; the evidence was voluntarily and freely offered. The plain meaning and intent of the statute is that the wife or husband of the prisoner shall not be *required* to testify as a witness. It is at the option of the prisoner, or of the prisoner's wife or husband to testify on behalf of the State. The *proviso* does not affect or destroy the competency of the witness; it restrains and holds in check the compulsory power of the court over the witness, usually conceded in ordinary cases.

2. There was no error in the instruction as to the degrees of guilt of which the defendant could be found guilty. The theory of the appellant on the subject involves a peculiar application of the doctrine of *autrefois acquit*, and former jeopardy.

The appellant, McCord, stood before the court below, at the May Term, 1871, charged by information with the crime of murder in the first degree. But it is claimed that the court below should have framed the charge to suit the case as it then stood, with reference to the acquittal of the higher grades of the offense at the December Term, 1870. But the *court* could not know that fact, or the fact of any other proceeding had on the case, prior to that term, except it be specially pleaded or made known in some manner consistent with criminal practice; as by a plea of *autrefois acquit*.

The authorities are uniform to the effect that where one is regularly convicted of an inferior grade or degree of an offense charged, he is necessarily acquitted of the higher grade or degeee, so long as the verdict stands. Also, where one is tried on an indictment or information consisting of more than one count, he stands acquitted as to all counts on which there is *not* a verdict of *guilty*, so long as the verdict stands. Hence it appears that the only point material to a decision of this question is, Does the granting of a *new trial* on the defendant's own motion, go to the entire charge—to the whole of the indictment or information? We claim that it does. 1 Wall.,

Jr., 127; 1 Iredell, 424; 3 Hill, (S. C.,) 239; 1 Blackf., 37. And see dissenting opinion of Ross, J., 29 Mo., 54.

The allowance of a new trial vacates the proceedings on the first trial and the cause is retried or continued, as if no jury had been empaneled. Walker's Am. Law, 690, § 243. Crim. Code, §§ 273, 274.

Section 274 provides, "the granting a new trial places the parties in the same position as if no trial had been had." Now if the accused was acquitted of all degrees of the offense, above and below the one of which he was found guilty, it must have been done by a "*trial;*" but the statute says, "the parties are placed in the same position as if *no trial* had been had;" if no trial has been had, how can the accused claim that he is acquitted?

The first verdict was vacated on *defendant's* motion. In seeking to avoid its consequences he waived all advantages, and the rule " twice in jeopardy," does not apply.

3. The information is good. The allegation of crime in the information, will, upon inspection, be found to comply with all the prescribed requirements of an information as defined by section 110, Criminal Code. And see 1 Kas., 365, where an indictment charging the offense in the same words was sustained.

The opinion of the court was delivered by

KINGMAN, C. J.: The appellant McCord was tried on an information charging him with murder in the first degree. He was found guilty of murder in the second degree, and sentenced to ten years imprisonment in the penitentiary. He brings the case to this court by appeal, and assigns three errors—first, that the information is defective; second, that the wife of the accused was improperly permitted to testify in behalf of the state on his trial; third, the misdirection of the court in a material matter of law.

I. The information is good. See *Smith v. The State*, 1 Kas., 365. It contains every averment necessary to be stated

1. Information in an indictment at common law. See 3 Chitty for murder; Cr. L., 751, 752, and authorities there cited. It requisites. contains such further averments as are necessary in an information for murder in the first degree under our statute, stated with accuracy, precision, and certainty—so that the defendant could not be misled as to the charge against him, nor the court in doubt as to the judgment to be pronounced on a verdict.

II. On the trial Sarah McCord, the wife of the appellant, was offered as a witness on the part of the State, and avowed her willingness to testify on the trial. The appellant objected to her as an incompetent witness. The objection was overruled, and the witness permitted to testify. The propriety of this ruling must be determined by the late statute on this subject. Laws 1871, p. 280, ch. 118, § 1. This section provides that no person shall be incompetent to testify in a criminal case "by reason of being the husband or wife of the accused," and contains this proviso, "That no person on trial or examination, nor wife or husband of such person, shall be *required* to testify, except as a witness on behalf of the person on trial or examination."

2. Wife of accused, a competent witness for the state.

The body of the section makes the husband or wife of the accused a competent witness in all cases. The proviso is a limitation, not on the competency of the witness, but on the power of the court to compel such witness to testify. When by the body of the section the witness was made competent, then if that stood alone all the measures that the law gives to courts could be resorted to to enforce the witness to testify. By the proviso this power is limited; and this is all the proviso attempts to do. Had the legislature intended such a witness competent only when called by the accused they could easily have made it plain by using the word *permitted* or *allowed* instead of the word *required*. This word has a definite meaning. It simply means that the State shall not demand as a right that such a witness under such circumstances shall testify. It does not profess to deal with the *competency* of the witness; only with the right of the prosecu-

tion to demand that they should testify, and the power of the court to enforce that demand. Therefore it does not prevent any such testimony from being voluntarily given.

Counsel claim that the word *required* has acquired a technical meaning in the law, and refer us to sections 325 and 326 of the code in support of their view. But in each of these sections the word is used in its common and ordinary sense, and the precise one we have given it above. The subpœna demands as a right that the witness shall attend, and of course the court can enforce such a demand by appropriate proceedings. The witness in this case was clearly not within the terms of the proviso, and the court correctly *permitted* the witness to testify. It would have been error had the court *required* her to testify on behalf of the State.

The sanctity and inviolability of the marriage relation is appealed to, and to preserve them the court is urged to give the statute a construction which we have seen it will not bear. The argument is one addressed more properly to the legislature than the court. If the law is open to the objections urged it should be repealed; but this should be done by the legislature, and not by judicial construction.

III. The charge objected to is in these words: "The defendant being charged in the information with murder in the first degree, you may, if in your opinion the evidence warrants the same, find him guilty of murder in the first or second degree, or of any one of the several degrees of manslaughter, or of an assault only."

The objection to this charge arises from the peculiar *status* of the case, and not from any inherent impropriety in the charge itself as applied to cases generally. The accused had been before tried on the same information, and had been found guilty of manslaughter in the third degree. On his motion a new trial was granted, and on the new trial the verdict was for murder in the second degree. It is contended that on the second trial he could not be convicted of a higher degree of the crime of which he was charged than that of which he

3. New trial in criminal case. Effect of order; position of parties.

was found guilty by the verdict on the first trial. The argument in support of this position may be briefly stated as follows: The verdict of "guilty of manslaughter in the third degree," on the first trial, was a verdict of not guilty as to all the higher degrees of the offense than the one of which he was found guilty; that when he moved for a new trial he only moved for a new trial of the issue as found against him, and therefore only waived the constitutional guaranty that he should not be twice put in jeopardy for the same offense, so far as was necessary to obtain a new trial, and that it was not necessary to, nor did he waive that constitutional right except as to the issue found against him, and not on those degrees of the offense of which by the verdict he was inferentially acquitted. In support of this reasoning counsel refer to *Brennan v. The People*, 15 Ill., 511; *Hunt v. State*, 25 Miss., 378; *People v. Gilman*, 4 Cal., 376; *State v. Ross*, 29 Mo., 35; *Jones v. The State*, 13 Texas, 184; *Lithon v. The Commonwealth*, 2 Va. Cases, 311; *Slaughter v. The State*, 6 Humph., 410; *Campbell v. The State*, 9 Yerger, 333, and *The State v. Tweedy*, 11 Iowa, 350. These cases, and some others from the same States, seem to support the doctrine for which the appellant contends. A contrary doctrine is maintained in *The State v. Comm'rs*, 2 Hill (S. C.,) 273; *The State v Morris*, 1 Blackf., 37; *United States v. Harding*, 1 Wallace, Jr., 127. And the absence of decisions in the older States upon the point may be suggested as showing that the theory is one that has only of late years found its way into our jurisprudence.

The power to grant a new trial in criminal cases constituted no part of the jurisdiction of the court at common law. In this country the courts have assumed and exercised with great uniformity the power of granting new trials in criminal cases. It is said, and so far as our researches extend it is true, that there are but two reported cases that deny this power: *The People, ex rel. Case, v. The Judges, &c.*, 2 Barb., 282, and *United States v. Gibert*, 2 Sumner, 19. This power to grant new trials is in some States conferred by express legislation.

In others the courts have assumed the power in the interests of justice and public safety, as was done in Massachusetts in *Com v. Green*, 17 Mass., 532. In other States its origin is found in the law organizing the court: *People v. Munson*, 1 Parker's C. R., 625. In every case where we have seen the question discussed it is assumed as a power conferred by legislation or by long usage. And in no case is it held to be a constitutional grant. It is a *privilege* offered by the law to the accused, in addition to the *guaranties* afforded by the constitution. As the power is conferred by law, it is competent for the law-making branch of the government to extend it, or to limit and modify it, at its pleasure, or to prescribe upon what terms it may be granted, so that it does not infringe upon any constitutional guaranty. In this State the terms are prescribed by law. In the code of criminal procedure are these provisions:

"SEC. 270. A new trial is a re-examination of the issue in the same court.

"SEC. 274. The granting of a new trial places the parties in the same position as if no trial had been had. The former verdict cannot be used or referred to either in evidence or argument."

The plain reading of these sections is conclusive of the whole matter under discussion. A critical examination of the sections does not change the result. A re-examination of the issue is to again examine it. The issue is the issue on the record, as it is there made up. It consists of the charge of the offense in all its degrees, as set out in the information, on the part of the State, and the plea of "not guilty," which is a denial of each and all the allegations of the information, on the part of the defendant. Such is the issue on the record, and the only issue in the case. It was the issue tried, and the issue to be re-tried, or, in the words of the statute, to be re-examined. The statute uses the words "*the* issue," not some part of the issue that may be ascertained by judicial construction—but *the issue*. Section 274 is quite as plain, and as if to guard against any misinterpretation declares that the granting of a new trial places the parties in the same position as if no

trial had been had. This is clear and conclusive. The very essence of the argument in favor of the rulings contended for by counsel for appellant is that the new trial places the party in a very different position from what he would have occupied if no trial had been had.

The statute and the decisions cited, are in direct conflict. The decisions are but evidence of what the law is, in absence of express statutory regulations, and cannot be used to overturn the law. Nor does our law conflict with any principle asserted in these decisions as can easily be shown: Three propositions are asserted: 1st.—That a verdict of acquittal or conviction is a perfect bar to another prosecution for the same offense, and this is a constitutional guaranty, of the benefit of which neither courts nor legislatures can deprive a party. 2d.— That a party may waive this constitutional safeguard, and that he does so when on his own motion he obtains a new trial. 3d.—That he waives this right only so far as may be necessary to obtain the new trial; and that it is only necessary to waive this right to so much of the verdict as finds him guilty of a certain degree of the offense, and not to that part that inferentially finds him not guilty of the other degrees. The first two of these propositions are admitted by all the authorities. As to the third there is some contrariety of opinion, upon which it is not our purpose to comment. For, assuming all the propositions to be correct in the absence of statutory regulations, and the result is not affected in this state, where, as we have seen, the legislature had a right to make a law, and where they have made one, that measures the extent of the waiver, and fixes its necessity. The authorities all agree that the constitutional right may be waived by the party convicted, and that this waiver is commensurate with the necessities of the party, in order to obtain a new trial. Whatever may be the proper rule as to the extent of the waiver where there is no statute, it is plain that where the statute has fixed the necessity, it has also there placed the extent of the waiver. In this state the necessity is that the party should waive the entire right so as to bring himself within the power of the court to grant him a new trial.

Mo. Valley R. R. Co. v. Caldwell.

His waiver goes no farther than his necessities.   He makes his motion with a full knowledge of the risks he takes, and of all the possible consequences.    To obtain a new trial, he voluntarily waives a right that neither courts nor the legislature can take from him—a right that he surrenders for his own benefit, and the exact extent of which was plainly written, as the terms on which it could be done, when his motion was allowed.   He is estopped from now complaining.   He has been unfortunate, but such a result must sometimes follow any new trial, even on the theory contended for by appellant, though the misfortune may not be so great.

We are aware that the decision in the case of the *People v. Gilman,* 4 Cal., 376, was made under a law similar to our own, and such may be the fact in some of the other States.   If so, they must hold the law unconstitutional; and before the decisions are convincing, they must show them to be so.   The law is admitted to be constitutional in the California case, and is then construed away by reasoning that violates every well-established principle of construction, and holds that if it is to be understood as it is written it is unconstitutional, but fails to show how.   We are not convinced by the case.   We believe the law to be constitutional.   By its terms it is decisive.   The judgment is therefore affirmed.

All the Justices concurring.