FRANCIS A. JOHNSON, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW.—Conviction of lower grade of offence included in indictment is an acquittal of the higher, for which higher offence no second trial can be had.

1. The defendant was indicted in a single count for murder in the first degree; on a first and second trial he was convicted of

murder in the second degree, the verdict at both trials being silent as to the higher crime: *Held*, that this is tantamount to an affirmative acquittal of the higher offence.

2. Where a party is tried upon an indictment, that in a single count charges the highest degree of an offence, and that includes lower degrees of the same crime, or that in several counts charges such highest degree and the lower degrees, and he is convicted of one of such lower grades of the offence, on a new trial, obtained at his request, he cannot again be tried for, or convicted of, any higher grade of crime than that of which he was at first convicted.

3. In such cases, upon such second trial, the party can be arraigned and tried upon the same indictment for the offence of which he was convicted on the first trial, with directions from the court to the jury that they shall confine their inquiries to the offence of which the party was at first convicted, and to such lower grades of the offence of which he was convicted as may be legally included therein.

4. In such cases, upon the second trial, it is unnecessary to specially plead such former acquittal of the higher offence.

5. It is error for the jury, after they have retired to consider their verdict, to have access to law books. They should get the law of the case by instructions from the court, and not from their own perusal of the books.

Writ of Error to the Circuit Court for Polk county.

The facts of the case are stated in the opinion.

*J. B. Wall, Wilson & Wilson, Crozier & McDermott* for Plaintiff in Error.

The first assignment of error is well taken.

The plea of the plaintiff in error, whether sufficient

in law or not, to bar a further prosecution for murder in the first degree, was properly and sufficiently pleaded, and should have been traversed or demurred to. A motion to strike was not the proper way to reach it.

"A plea of former jeopardy should not be passed on until traversed or demurred to." Lovett vs. State, (Ga.) 4 S. F. Rep., 912; Same Case, 80 Ga., 255.

The second assignment goes to the merits of the plea.

The defendant had been twice tried on the same indictment for the same charge, and twice convicted of murder in the second degree. We must consider first what was the legal effect of the verdict; and second, was its legal operation affected by a reversal of the judgment on defendant's application. Murder in the first degree in this State is the killing of a human being with a premeditated design to effect the death of the person killed, or of some other persons. Murder in the second degree is declared by statute to be the killing of another under certain circumstances, but "without any premeditated design to effect the death of any particular individual," consequently under the description and definition of the two grades prescribed and declared by law, a conviction of the second degree necessarily carries with it a finding of the jury of an absence of the premeditated design to take life, which constitutes the chief element of highest grade.

" Premeditation is what distinguishes it as murder

in the first degree and alone warrants a conviction punishable with death." Denham vs. State, 22 Fla., 664.

It was not necessary, therefore, that there should have been a verdict expressly acquitting the defendant of murder in the first degree ; the verdict of guilty of murder in the second degree was per se an acquittal of the former. Cooley's Const. Lim., 323 ; Girts vs. Com., 22 Pa. St. ; 10 Harris, 351 ; Stoltz vs. People, 4 Scannon, 168 ; Sweeney vs. State, 8 Sm. & Mar., 575 ; Weinzor vs. State, 7 Blackf.; 186 ; State vs. Phinney, 42 Me., 384; Cuemtin vs. People, 24 N. Y., 100 ; Stephen vs. State, 11 Ga., 225; Hayworth vs. State, 14 Ind., 590 ; State vs. Bolden, 33 Wis., 120 ; Bell vs. State, 48 Ala., 684; 17 Ala., 40 ; State vs. Brannan, 55 Mo., 63 ; Same Case, 55 Mo., 643 ; Johnson vs. State, 2 Ark., 31 ; Hart vs. State, 25 Miss., 378.

In this case the court uses the following pertinent language : "A verdict of a jury, finding a party, put upon his trial for murder, guilty of manslaughter in the third degree, must of necessity, operate as an acquittal of every crime of a higher grade of which he might have been convicted under the indictment upon which the issue was made. Otherwise the party, after undergoing the sentence of manslaughter, might be put upon his trial for the charge of murder, which would then be only postponed, and not decided by the verdict of manslaughter. The jury in such case render two verdicts, one acquitting the defendant of the higher crime charged in the indictment, and the other finding him guilty of an inferior crime. They must first de-

termine his guilt or innocence on the charge made by the indictment, before proceeding to consider whether he is guilty of an inferior crime. The verdict of manslaughter is as much an acquittal of the charge of murder as a verdict pronouncing his entire innocence would be, for the effect of both is to exempt him from the penalty of the law for such crime." The legal effect and operation of a conviction of the lower grade being then, necessarily, an acquittal of the higher, is this affected by a new trial granted on the application of the accused. It has been held by the courts of some of the States, that such would be the effect of a new trial when there is but one count in the indictment and one verdict, on the ground that the verdict is an entirety, and to set it aside for one purpose sets it aside for all. But conceding for the sake of argument, the force of this reasoning, we might with equal propriety contend that when two men are indicted jointly, the indictment containing only one count, if one of them is convicted, and the other acquitted, the setting aside the verdict as to one, operates to set it aside as to both, which would at once, nullify the constitutional safeguard, which prohibits a second jeopardy for the same offence. The current of judicial authority is overwhelmingly in support of the plea. In the state of Arkansas, the penal code provides that "the granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict cannot be used, or referred to in evidence, or argument, and

yet in the face of that statute the Supreme Court of
Arkansas held that a conviction of murder in the sec-
ond degree was *per se* an acquittal of murder in the
first degree, and protected the defendant on a second
trial from a conviction of the higher offence.   John-
son vs. State, 29 Ark., 31; also in Cal.; People vs.
Gilmon, 4 Cal., 376; also in Texas; 6 Humph, 410,
(Tenn.), 11 Iowa, 351.

The reasoning on which these decisions are based,
is just.   When a man indicted for murder in the first
degree is convicted, of a lower grade of felonious hom-
icide, and applies for a new trial, of what is he seeking
a new trial?   Certainly not of the charge of murder
in the first degree.   He is already protected from the
penalty of that offence by his conviction of the lower
grade.   He is then asking for a rehearing of the of-
fence of which he has been convicted, and on this re-
hearing, the state should be restricted to an investiga-
tion of that offence together with such minor offences
of a kindred character as may be embraced in the in-
dictment.   1 Bish. Crim. Law, 4th Ed., Sec. 849;
State vs. Kittle, 2 Tyler, 471; Campbell vs. State, 9
Yerg., 334; Clenn vs. State, 42 Ind., 420; Jones vs.
State, 13 Texas, 168; Tweedy vs. State, 11 Iowa, 351;
Ross vs. State, 29, No. 32; Jordan vs. State, 22 Ga.,
558; Brennan vs. State, 15 Ill., 512; Ramon vs. State,
1 Swan., 14; Morris vs. State, 3 So. & Mar., 762; Kat-
tleman vs. State, 35 Mo., 105; Martin vs. State, 30
Wis., 216; Hill vs. State, 30 Wis., 416; Joseph vs-

State, (La.), 3 South. Rep., 405., 40 La. Am., p. 5; Slaughter vs. State, 6 Humph., 412; Robinson vs. State, 21 Tex. App., 160; 5 La. Ann., 398.

The opinion of this court in the Pottsdamer case and Mann case, although an *obiter dictum*, in each case, evidenced the fact, that the court as then constituted, took the same view of this question. (18 Ohio St., 390, *contra*.)

The third, fourth, fifth and sixth assignments of error, deal with the instructions of the court to the jury, which are in our judgment, misleading, and erroneous. The instruction quoted in the third assignment requires the jury to convict the defendant of murder in the first degree upon mere proof of the killing in Polk county. Under a strict construction of this charge, and we hold that the appellate court must construe the charge according to its verbiage, and not according to any possible understanding of it, the jury were precluded from considering any evidence either of justification or extenuation. This court has heretofore held, that malice is a deduction of fact, to be determined from the facts and circumstances of the case, and not a presumption of law. By parity of reason in every constituent element necessary to enter into the crime of murder in the first degree must also be derived from the facts and circumstances of the case, and cannot be presumed. An instruction that the defendant must satisfy the jury that

he used a deadly weapon in a justifiable manner is clearly wrong without the qualification that such defence might arise from the state's testimony. Under the charge referred to in the sixth assignment, the jury could not convict of a lower grade of crime, but was confined to the charge contained in the indictment.

The seventh assignment is incontrovertible. In Burroughs vs. Univia, 3 Car. & P., where the jury requested a certain law book to be sent to them from the library of the court, Lord Tenderden, C. J., refused their request, although counsel for both sides consented, saying very properly, "that the jury should receive their law from the court." This rule has been universally adopted by the American Courts, to such an extent that we contend that the taking of a law book to the jury, either with or without the direct authority or permission of the court, was such an invasion of the sacred rights of the plaintiff in error as to entitle him to a new trial.

The eighth assignment is submitted without argument.

The ninth and tenth assignments are general and are covered by the argument of the others. While we believe that sufficient error is disclosed by the record, to entitle the plaintiff in error to a new trial regardless of the question raised by his special plea, we would ask to impress upon the court the importance of set-

tling that question in this state. Authorities as to seventh assignment of error. Thompson & Merriam on Juries, sec. 359-391; Harrison vs. Hana, 37 Mo., 135; Merrill vs. Nary, 10 Allen, 416; State vs. Kimball, 50 Me., 418; Hardly vs. State, 7 Mo., 607; State vs. Smith, 6 R. H., 33; People vs. Hartnung, 4 Park C. R., 250; Newkink vs. State, 27 Ind., 3; 2 Thompson's Trials, sec. 2586; Merrill vs. Mary, 10 Allen, 416; State vs. Haines, 34 La., 118; State vs. Smith, 6 R. I., 33.

*The Attorney-General* for the Defendant in Error.

The manner of disposing of the special plea is made the subject of the first assignment of error.

A motion to strike may not have been the proper remedy for disposing of the special plea, but if the plea was not properly pleaded and was not good in law, the plaintiff in error has not been injured and no substantial error has been committed. There was no record of the former conviction accompanying the plea. Again the plea should not avail in law, even if properly framed. The plea raises the question whether or not a conviction of an offence of a minor grade has the effect to acquit the prisoner of the higher grade charged in the indictment and bar a conviction of the higher grade on a new trial. We contend not. Counsel for plaintiff in error cites many authorities on the other side.

There are respectable authorities supporting our conclusion, and we think in reason and principle are better founded than those maintaining the opposite view. Both new trials in this case were sought by plaintiff in error, either by writ of error to this court or by motion in court below.

The resubmission of all the issues embraced in the indictment was voluntary on the part of defendant below. The new trial had the effect to make the issue triable as broad as the indictment. U. S. vs. Haiding Wallace, (Jr.,) Reports, 127; State vs. Commissioners, 3 Hill (S. C.), 339; State vs Morris, 1 Blackford, 37; See Bouvier Law Dictionary, New Trial, Zaleskie vs. Clark, 45 Conn., 401.

Again there was never final judgment on the verdict in the former convictions. To have the effect contended for by plaintiff in error, this was necessary. Hurley vs. State, 6 Ohio, 400; Citing Hale's Pleas of the Crown, p. 243.

We contend that the verdict in either or both convictions of murder in the second degree was not an adjudication that defendant below was not guilty of murder in the first degree.

These verdicts were entire and not severable; that only in cases where acquittal or conviction is on different counts for separate and distinct defences; or where there are several defendants, does the result follow contended for by the plaintiff in error. For a

review of all the leading cases *pro* and *con*, and as full vindication of the view we entertain of the effect in law of the special plea if properly pleaded. See Bohanon vs. State, 18 Nebraska, page 57.

Certain portions of the charge of the court are assigned as error. We think the jury were not mislead by the portions cited. The charge was full and explicit as to every offence embraced in the indictment, and of which defendant below was liable to be convicted and dealt fully with what would excuse or justify him in the act committed and which was charged as a crime.

We do not think that in the 5th assignment of error the charge is subject to the objection in Dixon vs. State, 13 Fla., page 636. Coupling the portions of the charge cited as error with the next paragraphs and the jury could not be misled thereby. It is assigned for error that the jury during their deliberations, had in their room a copy of McClellan's Digest.

It does not appear from the affidavit of the bailiff that they read from it or in it, or that in any way the presence of the Digest of the Laws influenced the verdict improperly. This should be shown affirmatively to constitute good ground for a new trial. That the jury did not rely upon the copy of the Digest for their law in the case is shown by the fact of their re-appearance in court and asking for further instructions from the court, which was given. This court will not inter-

fere with the discretion of the trial judge in such mat-
ters unless it affirmatively appears that the verdict
was improperly influenced by the alleged erroneous or
irregular act on the jury's part. Bird vs. State, 18
Fla., 493; Thompson on Trials, vol. 2, p. 1951, sec.
2586; Graves vs. State, 63 Ga., 740, State vs. Hopper,
71 Mo., p. 425; Wilson vs. People, 4 Park's Crim.
Rep., 619; Foster vs. McObleen's Matthews, 18 Mo.,
88; Clapp vs. Clapp, 137 Mass, 183.

TAYLOR, J. :

On the 27th day of January, 1887, in the Circuit
Court of Polk county, an indictment containing but a
single count was found against the plaintiff in error,
Francis A. Johnson, charging him with murder in the
first degree of one John C. Newcastle. In May, 1887,
upon this indictment, Johnson was tried and convicted
of *murder in the second degree*; the jury rendering
the following verdict: "We the jury, find the de-
fendant, Francis A. Johnson, guilty of murder in the
second degree, so say we all." Motion for a new
trial being refused, Johnson was sentenced to impris-
onment in the penitentiary for life, and from this
judgment took writ of error to this court. At the
January term, 1888, of this court, this judgment was
reversed, and a new trial ordered for reasons stated in
the opinion of the court (Johnson vs. State, 24 Fla.,
162.) Afterwards, on the 11th of June, 1890, John-

son was again arraigned in the Circuit Court of Polk county upon the same indictment, and then interposed the following pleas :

"And the said Francis A. Johnson, in his own proper person came into court, and having heard the said indictment read, says that the State of Florida ought not further to prosecute the same against him because, he says, that heretofore at a term of the Circuit Court aforesaid, county of Polk, holden on the 16th day of May, A. D., 1887, this defendant was arraigned upon the said indictment, to which indictment this defendant pleaded not guilty, and the said State joined issue on said plea, and the jurors thereupon duly summoned, impannelled and sworn to try said issue, upon their oaths did say that this defendant was not guilty of murder in the first degree, as charged in said indictment, but was guilty of murder in the second degree, and thereupon this defendant was by the judgment of the court sentenced to imprisonment in the State prison for the term of his natural life, which judgment was afterwards by the Supreme Court of the State of Florida reversed, and this defendant granted a new trial."

"2d. And this defendant further pleading, says that at another term of the Circuit Court holden for said county of Polk, on the 12th day of November, A. D., 1889, he was again arraigned upon the said indictment, and pleaded not guilty as stated.  The jury duly sum-

moned, impanelled and sworn to try said issue, upon their oaths did say that said defendant was not guilty of murder in the first degree, but was guilty of murder in the second degree, all of which will appear by the records of the court, reference thereto being prayed, and which verdict was set aside and a new trial granted. All which matters and things pertaining to the trial and conviction of this defendant will more fully appear by the record of said court, reference thereto being prayed; and the said Francis A. Johnson avers that he and the Francis A. Johnson who was defendant in the trials recited in this plea, and convicted as aforesaid, are one and the same person, and not divers and different persons, and that the indictment upon which this defendant was tried as aforesaid, is the same indictment which he is now called upon to answer, &c."

Upon the interposition of these special pleas the State by its attorney moved the court to strike the same from the files upon the following grounds: "1st. Because if the facts as set forth in said pleas are true they constitute no defence to this charge. 2nd. Because said pleas are too general in substance. 3rd. Because if the facts set forth in said pleas were true it would not entitle said defendant to a discharge. 4th. Because said pleas are insufficient in law." This motion was sustained and the pleas were stricken, to which the defendant excepted. Johnson was then

put upon trial for murder in the first degree, as charged in the indictment, which trial resulted in the following verdict: "We, the jury, find the defendant guilty of murder *in the first degree*, and recommend him to the mercy of the court." Motion in arrest of judgment was then made upon the following grounds: 1st. Because the court erred in sustaining the motion of the State's attorney to strike the special plea in bar of the defendant, filed on the 11th day of June, A. D., 1890. 2nd. Because the court erred in overruling the special plea in bar of the defendant, filed on the 11th day of June, A. D., 1890. 3rd. Because, as shown by the records of the court, the defendant has been twice acquitted of the crime of murder in the first degree, and convicted of murder in the second degree." This motion was overruled, and an exception taken. Motion for a new trial upon various grounds not necessary to mention, was then made and denied, and the defendant was sentenced to confinement in the penitentiary for life. From this judgment the case is brought here upon writ of error.

As will appear from this statement of the case, Johnson has been tried three times upon the same indictment, containing but a single count, in which he is charged with murder in the first degree. The two first trials resulted in a conviction, each time, of murder in the *second degree*; the last trial, now under review, resulting in a conviction of murder in the *first*

*degree*, with recommendaton to mercy. The interposition of the special pleas in bar at the last trial presents the question: Can a party who has been tried under an indictment charging the highest grade of any given crime that includes lower degrees of the same offence, and who has been convicted upon such trial of one of the lesser degrees, upon a new trial obtained at his request, be again put in jeopardy for the highest offence charged in such indictment, or for any grade of the same offence higher than that of which he was convicted ?

Though there is dicta in the cases Pottsdamer vs. State, 17 Fla., 895, and Mann vs. State, 23 Fla., 611, tending towards an answer to this question in the negative, yet the questions is now pointedly before this court for the first time. While there are some authorities holding a different view, the preponderant current of the decisions maintain that a conviction for the lesser grade of offence is an acquittal of all grades above it in degree included in the same indictment, though there is no express declaration of such acquittal in the verdict; and that upon a new trial, obtained at the convict's request, he cannot be again put in jeopardy for any grade of offence higher in degree than that of which he was at first convicted. We think the latter the correct view, and the rule that must prevail here. The decisions that hold a contrary view are either confined to special statutory

construction, or, are premised upon the mistaken idea that the doctrine, "that a verdict of express conviction of a lower, is an acquittal of the higher grade of the same offence, though such acquittal be not expressed," is founded in technical fancy with nothing of substance to rest upon. That a verdict convicting of the lesser, non-expressedly acquits of the greater offence, there can be no doubt. If not, then a party charged with and tried for murder, but convicted of manslaughter, with nothing said as to the higher grade, when such conviction stands undisturbed, could be again tried for every successive higher grade of the same crime until he stood convicted or acquitted of the highest charged. The silence of the verdict as to the higher grade of offence for which the prisoner was tried has, through a long line of modern decisions, come to be considered just as affirmative and decided an acquittal of such higher grade, as though the verdict had, in express terms, found an acquittal thereof. And this practice as to the legal effect of verdicts expressly finding upon one, and remaining silent as to other issues involved in the trial, has, we find, taken the place of what was formerly a very strict requirement in the rendition of verdicts, that is, that they should contain an express finding upon every issue involved. Thus in Graves vs. Morley, 3 Levinz's Rep., 56, where the defendant was sued in tresspass for taking the plaintiff's gown and mantua, a special verdict found that the defendant, as constable, took the gown for a tax, but found nothing as to

the mantua; the court held the whole a discontinuance for that cause, citing Tingman vs. Starkey, 3 Cro., 133, which was a case in debt for seven pounds, the jury rendered a verdict for six pounds, but did not find *nil debit* for residue. The verdict was set aside for that reason. In Hooper vs. Shepherd, 2 Strange's Rep., 1089, suit in debt was brought upon a charter-party for the hire of a ship in which 500 pounds was claimed as the balance due, the defendant pleaded other payments, the jury found for 357 pounds and 11 shillings, saying nothing as to the rest of the 500 pounds claimed. It being then objected that this was an imperfect verdict, the jury not having answered to all they were charged with, the judgment was reversed for that cause.

In King vs. Hayes, 2 Raymond's Rep., 1518, the defendant was indicted in three separate counts for forgery, the jury convicted on two of the counts, leaving the guilt or innocence of the accused on the remaining count to the court by a special finding. The court held that no judgment can be given on a verdict which leaves undecided any part of the matter put in issue; but sustained the verdict because it did find expressly as to the remaining count leaving the guilt or innocence of the accused to the court as a question of law, upon special facts found in the verdict. In Coke on Lit., sec. 366, p. 227, treating of verdicts, it is said: "A verdict that finds part of the issue, and finding nothing for the residue, this is insufficient for the whole, because *they have not tried the whole issue*

*wherewith they are charged.*    As if an information of intrusion be brought against one for intruding into a messuage and 100 acres of land, upon the general issue the jury found against the defendant for the land, but say nothing for the house, this is insufficient for the whole, and so was it twice adjudged.    But if the jury gives a verdict of the *whole issue,* and of more, that which is more is surplusage, and shall not stay judgment, for *utile per inutile non vitiatur;* but necessary incidents required by law the jury may find. If the *matter and substance* of the *issue be found,* it is sufficient."    And in this country as late as 1846, in the case of State vs. Sutton, 4 Gill (Md.), 494. the same stringent rule was adhered to.    In that case the indictment contained two counts, the first for rape, the second for assault with intent to commit rape; the jury found the prisoner guilty on the second count, saying nothing in their verdict as to the other.    Upon motion in arrest of judgment because of this omission in the verdict, the court reversed the judgment and ordered a new trial, holding that it was in effect nothing more than a mistrial of the cause.    And the same rule was still adhered to in that state in 1855, in Weigharst vs. State, 7 Md., 442, though the court in that case, reiterated what was said in State vs. Flannigan, 6 Md., 167, so modified their former views on the question as to hold that "where an issue is joined on a single count, involving different grades of homicide, a conviction of manslaughter, or of murder in the second

degree, necessarily implies a finding of not guilty of the higher offence.''

Modern decisions, however, have relaxed the strictness of this rule as to the formal requirements of verdicts; and have practically substituted in its stead the broader, and as we think, more practical rule: ''That where the indictment, either in one or several counts, involves different grades of the same crime, a verdict convicting of one of the lower grades, but saying nothing as to the higher, necessarily implies a finding of not guilty of the higher offence.'' Which *implied acquittal* is as effective for all legal purposes as though, in accordance with the former strict rule, it had been expressly incorporated in the verdict. In Sholtz vs. People, 4 Scammon (Ill.), 168, in which the indictment contained two counts—the first charging the keeping of a gambling house, the second for keeping open a tippling house on the Sabbath, the verdict was guilty on the first count, but no finding on the second count. Motion in arrest was made because of this omission, the court said: ''The general rule is, that the verdict must be as broad as the issues submitted, and it was formerly held, with much strictness, that a failure to find on all the issues vitiated the verdict. The tendency of modern decision, however, has been to relax the severity of the rule, and sustain the verdict, where the *intention of the jury* can be ascertained. What is the reasonable view to be drawn from this verdict, and the circumstances under which it was rendered ? The people prefer two charges of criminal offences against

the defendant; he is arraigned on them, and the question of his guilt submitted to the jury for determination. They hear the testimony adduced to substantiate both charges, and find affirmatively that he is guilty of one. Is not the inference irresistible that the prosecution failed to establish his guilt on the other charge, and therefore the jury find negatively on it? We are of opinion that the verdict should be regarded as an acquittal of the defendant on the second count. If such be the effect of the verdict, he certainly has no right to complain. He can never again be put on his trial for the same offence. He has once been put in jeopardy, and the charge against him adjudicated." In State vs. Phinney, 42 Maine, 384, where the indictment contained four counts—the first two charging, in different forms, an assault with intent to murder; the last two an assault to kill—the defendant was convicted on the fourth count, the verdict being silent as to the others; motion in arrest of judgment and for a new trial was made upon the ground that the verdict was incomplete, and amounted to a mistrial. The court, after reviewing various authorities as to the formal requirements of verdicts, says: "The indictment in the case at bar contains four counts. They all refer to one transaction, charging but one substantive offence, with different degrees of aggravation. If the evidence would have authorized, it was competent for the jury to have found the defendant, under this indictment, guilty of an assault simply, or of an assault with intent to kill, or of an assault with intent to murder, as the

two former are elements of, and necessarily included in the latter, or higher and more aggravated offence. The defendant was entitled to a verdict upon each and all the substantive charges in the indictment, and it was the duty of the court to have required the jury to respond distictly to the several counts contained therein. The intention of the jury cannot, however, be misunderstood. They manifestly intended to find the defendant guilty on the fourth count, and not guilty on the first three; and such, we think, is the legal effect of the verdict, whether a *nolle pros.* be entered or not. The cause is analagous to an indictment for murder where the jury return a verdict for manslaughter." In Girts vs. Commonwealth, 22 Penn. St., 351, the indictment contained eight counts; the defendant was convicted of the last four counts, the verdict being silent as to the first four. Motion in arrest was made on the ground that there was no finding by the jury on the first four counts. Upon error to the Supreme Court that court says: "The finding is in substance, though not in form, upon all the counts, and is in effect a verdict of not guilty as to those not mentioned." To the same effect is Swinney vs. State, 8 Smedes & Marshall (Miss.), 576. In Stephen vs. State, 11 Ga., 225, the indictment contained two counts, the first charging rape, the second an attempt to commit rape; the verdict convicted of the attempt, saying nothing of the main charge. Upon the contention that the verdict was not full enough, the court says: "Under an indictment for murder, the jury may find a verdict for manslaughter,

either voluntary or involuntary.   But it has never been the practice for the jury to negative, by their verdict, the charge of murder.   It might be well enough, perhaps, for the court, in rendering judgment upon such a finding, to pronounce a judgment of acquittal for the higher offence ; for such we apprehend to be the legal interpretation of the verdict.   The objection, if good at all, therefore, should have been to the judgment of the court, and not to the verdict of the jury.   The State puts the prisoner upon his trial for rape, and not having exhibited evidence sufficient to convict him of this offence, the jury found him guilty of the attempt. He is consequently entitled to a judgment of acquittal as to the rape."   To the same effect is Guenther v. People, 24 N. Y., 100.

It is evident from these authorities and many others that we have examined that the old stringent rule requiring verdicts to be as broad and comprehensive as the issues tried, has been abrogated by long and practically universal practice and usage in the courts, and that in its place and stead has been substituted the more convenient and sensible rule to treat a verdict, that expressly convicts of one crime included in an indictment and that is silent as to other crimes of higher grade also included therein, as being an equally forceful and effective acquittal of the higher offence as to which it is silent, as though, according to the old rule, it had, in express terms declared such acquittal.   It cannot be correctly said of this rule, then, replacing as it does a former strict requirement of the law, that it

is founded in technical fancy.  Under the abrogated rule the accused *had the right* to an express finding upon all the issues against him ; the new rule does not deprive him of that substantial right, but declares that the silence of the verdict shall be regarded in law as a sufficient assertion of such right.  And this legal effect of the new rule is the true reason, we think, why a party convicted of a lesser offence included in an in dictment that charges a higher, upon a new trial, cannot be again put in jeopardy for the higher offence of which he stands acquitted by the silent legal operation of the verdict.

A contrary view is taken in State vs. Commissioners of Cross-roads, 3 Hill (So. Ca.), 239, but the question was not discussed at any length, the case being one of trivial import.   In Livingston vs. Commonwealth, 14 Gratt. (Va.), 592, Daniel, J., who delivered the opinion of the court, discussed the question at some length favorably to the view we have taken, but the majority of the court, without assigning any reasons, decided otherwise upon this question.   Contrary doctrine was also held in Morris vs. State, 1 Blackford (Ind.), 37, but without discussion.

In Veatch vs. State, 60 Ind., 291, where the defendant was indicted and tried for murder and was convicted of manslaughter, it was held that upon a new trial he could be again tried for murder, but the decision is expressly put upon the following statutory provision : ''The granting of a new trial places the parties in the same position as if no trial had been had ;

the former verdict cannot be used or referred to, either in evidence or argument." In State vs. Behimer, 20 Ohio St., 572, it is held that the granting of defendant's motion for a new trial was to set aside the whole verdict, and that it can neither operate as an acquittal, nor as a bar to the further prosecution of any part of the offence charged. In Commonwealth vs. Arnold, 83 Ky., 1, it is held that the defendant on a new trial granted at his request can be convicted of the higher offence charged in the indictment, though the first conviction was for a lower grade of crime, the decision is based expressly upon the following statutory provision : "The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict cannot be used or referred to in evidence or in argument." In State vs. McCord, 8 Kan., 232, where the same doctrine is held, the decision is based upon a statutory provision exactly like that in the Kentucky and Indiana Codes above quoted. In Bohanan vs. State, 18 Neb., 57, where it is held that on a trial for murder if the defendant is convicted of a lower degree of homicide than the highest degree charged in the indictment, on a new trial granted on his motion, he may be tried for and convicted of the highest offence charged ; but the decision in that case dwells at length upon and follows the above, cited decisions in Ohio, and states that the entire criminal law of Ohio had been substantially transferred to the statute books of Nebraska.

By the twelfth section of the Declaration of Rights our Constitution provides that: "No person shall be subject to be twice put in jeopardy for the same offence." If, as we have before seen, the silence of the verdict, in such cases, as to the highest offence charged, amounts to as complete an acquittal and discharge of the prisoner from such higher charge, as though the verdict in express terms declared such acquittal, we are unable to see how he could be again subjected to another trial for such higher offence without violating this provision of the organic law. When the defendant has been convicted of the lower offence charged against him and moves for a new trial, what is his application? Certainly he does not seek relief from a charge of which he stands acquitted; but his asking is for relief from the charge that has been *adjudged* against him. Suppose the old rule with reference to the formality of verdicts, that we have shown to be supplanted, were still adhered to in the practice of the courts in all of its original stringency, under it the verdict of the jury in the first and second trials of this cause would have been as follows: "We, the jury, find the defendant not guilty of murder in the first degree as charged in the indict ment; but we find the said defendant guilty of murder in the second degree." And, according to the same strict rule, the defendant would have been entitled, as a matter of right, to an entry of a formal judgment of acquittal, upon such verdict, as to such higher crime. Suppose, then, he had asked for a setting aside of this

verdict and judgment and for a new trial, what would
have been the extent of his asking? Certainly noth-
ing more·than that such part of the verdict and judg-
ment as convicted him should be annulled and retired;
leaving that part which acquitted as the record evi-
dence of his perpetual freedom from further jeopardy
therein. And, as before seen, the modern rule does
not abridge this right, but recognizes in the silence of
the verdict and judgment the same effective acquittal,
attended with as much forcefulness as though it were
fully expressed. The argument that the verdict is a
unit and cannot be disturbed in part without being
displaced in toto, has no force. Otherwise, if three
be indicted together for the same murder as princi-
pals, and two were acquitted, and the third convicted,
the two acquitted would have to be retried upon a
new trial granted to the convict, because the verdict
was a unit. In this view of the law we are fully sus-
tained by the following authorities: State vs. Kittle,
2 Tyler (Vt.), 471; Esmon vs. State, 1 Swan. (Tenn.),
14. In Slaughter vs. State, 6 Humph., (25 Tenn.),
410, the defendant was indicted and tried for murder
in the first degree and convicted of manslaughter, it is
held that upon a second trial the defendant could not
be convicted of any higher grade of offence than
manslaughter. In Campbell vs. State, 9 Yerg., (17
Tenn.), 332, it is held that where a defendant has
been convicted on one count of an indictment and
acquitted on the other counts, a motion by·him for a
new trial cannot be understood as going further than

to the count on which he was found guilty, and it is error in the court, in such a case, to set aside the whole verdict. And so it is held in Desmond vs. State, 5 La. Ann., 398. And so also in State vs. Joseph, 40 La. Ann., 5. The same conclusion is reached in People vs. Gilmore, 4 Cal., 376. In Bruman vs. People, 15 Ill., 511, it is held that in an indictment for murder, and a verdict found for manslaughter, if the accused seeks and obtains a new trial, he will only be tried for the offence of which he was found guilty; and that a verdict of acquittal or conviction is a bar to a subsequent prosecution for the same offence, although no judgment has been entered upon it. In Hurt vs. State, 25 Miss., 378, it is held that the verdict of a jury finding a party, put upon trial for murder, guilty of manslaughter in the third degree, must operate as an acquittal of any crime of a higher grade, of which he might have been convicted under the indictment ; and that in such a case, the jury, in comtemplation of law, renders two verdicts; the one acquitting him of the higher crime charged in the indictment; the other finding him guilty of an inferior crime. In Johnson vs. State, 29 Ark., 31, it is held that where the defendant was indicted for murder in the first degree, tried and found guilty of murder in the second degree, it was an implied acquittal of the higher grade of homicide, and he could not be again put in jeopardy for that offence; and it is the duty of the court so to instruct the jury,

*whether the formal acquittal is pleaded or not.*
At the time of the rendition of this last decision a stat-
utory provision was in force there relative to the effect
of the granting of new trials exactly like that quoted
above in the States of Indiana, Kentucky and Kansas,
but in commenting upon this statute the court says :
"That if this section of the code is meant to subject a
party to a second trial for an offence of which he was
acquitted at the first trial, it is in conflict with that
clause of the constitution which declares that 'no per-
son after having been once acquitted by a jury for the
same offence shall be again put in jeopardy of life or
liberty.' " In Jones vs. State, 13 Texas, 168, it is held
that where the defendant was indicted for murder in
the first degree, and convicted of murder in the second
degree, and there was a new trial, upon the second
trial he could not be tried and convicted of murder in
the first degree. The same doctrine is announced in
Jordan vs. State, 22 Ga., 545. In Bell and Murray vs.
State, 48 Ala., 684, it is held that a verdict finding the
defendant guilty of burglarly on the trial of an indict-
ment charging, in separate counts, both burglarly and
grand larceny, is tantamount to an acquittal of grand
larceny, and thereafter expunges that charge from the
indictment ; and that the acquittal thus obtained is
ffnal, and not impaired by a judgment rendered by the
appellate court, on the defendant's appeal, reversing
the conviction for burglary and remanding the cause

for further proceedings. In Smith vs. State, 68 Ala., 424, it is held, also, that under an indictment for murder, if the defendant is found guilty of murder in the second degree, he cannot, on another trial, be convicted of the higher offence. In State vs. Ross, 29 Missouri, 32, it is held that where a person is indicted for murder in the first degree, and is put upon his trial and convicted of murder in the second degree, and a new trial is ordered at his instance, he cannot legally be *put upon his trial* again upon the charge of murder in the first degree, and that he can be put upon his trial only upon the charge of murder in the second degree. The same doctrine is reaffirmed in State vs. Kattleman, 35 Mo., 105, and again in State vs. Brannon; 55 Mo., 63. In State vs. Martin, 30 Wis., 216, it is held that upon an indictment for murder, where the defendant is found "not guilty of murder, but guilty of manslaughter in the second degree," and is granted a new trial, such new trial must be held to relate only to the question whether he is guilty of manslaughter in the second degree ; and he cannot therein be convicted of any higher crime. The same doctrine is re-affirmed in State vs. Belden, 33 Wis., 120. The same doctrine is held in State vs. Tweedy, 11 Iowa, 350. Cooley's Constitutional Limitations, 402. It seems to be the settled practice from these authorities in such cases, that a special plea asserting the former acquittal of the higher offence, is unnecessary where the new or second trial is in the same tribunal as the first ; and that upon the second trial the defendant is

arraigned and tried upon the same indictment, but the court instructs the jury at the outset that they must confine their enquiries to the charge of which the de-defendant was before convicted, or to any lower degree or grade of crime that may be legally included in that for which the first conviction was had ; with the further instruction that they cannot convict of any higher crime than that of which the defendant was convicted on the former trial.

There are other assignments of error of minor importance that we do not deem it necessary to notice further than to say that in such cases it is erroneous to allow the jury, after retiring to consider of their verdict, to have access to law books of any description. They must get their instructions as to the law of the case from the court, and not from their own perusal of the books. The court below erred in sustaining the motion to strike the defendant's pleas of *autre fois acquit ;* and also erred in putting the defendant upon trial for murder in the first degree.

The judgment of the court below is reversed and a new trial ordered, with instructions that upon such new trial the enquiry shall be confined to the charge of murder in the second degree and to such lower grades of crime below murder in the second degree as are included in that charge.